IN the INTEREST OF C.E.W., a Person
Under the Age of 18:

WAUKESHA COUNTY DEPARTMENT OF SOCIAL SERVICES,
Appellant,

v.

C.E.W., Respondent.

*No. 84–045. Argued February 26, 1985.—Decided May 29, 1985.*

(Also reported in 368 N.W.2d 47.)

48

For the appellant there were briefs and oral argument by *Stephen C. Lepley,* assistant corporation counsel.

For the respondent there was a brief and oral argument by *Michael D. Mandelman,* Milwaukee.

There was an amicus curiae brief by *Lee S. Dreyfus, Jr.,* guardian ad litem, and *Love, Voss & Dreyfus,* Waukesha, and oral argument by *Lee S. Dreyfus, Jr.*

SHIRLEY S. ABRAHAMSON, J.    This appeal from a judgment of the circuit court for Waukesha county, Harry G. Snyder, circuit judge, is before the court on certification by the court of appeals pursuant to sec. 809.61, Stats. 1981–82. The circuit court dismissed the petition for termination of parental rights of C.E.W. brought by the Waukesha County Department of Social Services (County), because, according to the circuit court, "the jury . . . returned a verdict finding that it was not appropriate at this time to terminate the parental rights of [C.E.W.]." Because the circuit court erroneously instructed the jury that it, the jury, determines whether parental rights are terminated, we reverse the judgment and remand the cause for a new hearing.

On June 30, 1983, the Waukesha County Department of Social Services (County) filed a petition requesting the involuntary termination of parental rights of C.E.W., the natural father, to his three minor male children, each of whom was under the age of eight years. The natural mother's parental rights had already been terminated. The petition alleges two grounds for involun-

tary termination of parental rights to each of the three children: continuing need of protection or services, sec. 48.415(2), Stats. 1981–82, and parental noninvolvement (abandonment), sec. 48.415(1)(a)2, Stats. 1981–82.

C.E.W. contested the petition. A guardian ad litem represented the children in the proceeding. The circuit court allowed the guardian ad litem to present and cross-examine witnesses but precluded him from making opening and closing statements to the jury and from exercising peremptory strikes of potential jurors. The jury, requested by C.E.W. pursuant to sec. 48.422(4), Stats. 1981–82, returned a verdict favorable to C.E.W., and the circuit court dismissed the petition, pursuant to sec. 48.31(2).

The County appealed, and the court of appeals certified the following question: (1) "Whether in proceedings for the termination of parental rights the best interests of the child standard is to be applied throughout the entire proceeding?" In their original and supplemental briefs and in oral argument before this court the parties presented three additional issues: (2) Did the circuit court err in instructing the jury that it, the jury, determines whether parental rights are to be terminated? (3) Did the circuit court err in refusing to allow the guardian ad litem to strike jurors and to present open and closing statements to the jury? and (4) Did the circuit court err in its instructions to the jury regarding the five-sixths verdict rule?

These issues are issues of law which this court may decide without deference to the circuit court. Although we reverse the judgment on the basis of the circuit court's error in instructing the jury that it, the jury, determines whether parental rights are to be terminated, we shall also consider the remaining issues, including the issue certified by the court of appeals, without con-

sidering whether the issues were properly preserved for appellate review. We do so because these issues may arise on remand in the new fact finding proceeding.

## I.

The circuit court gave the following instruction to the jury regarding the first alleged ground for termination of parental rights:

"The first alleged ground for Termination of the Parental Rights of [C.E.W.] is that the child in question is in need of protection and services, has been placed outside the home for a period of one year or longer, and that the parent has refused to remedy the conditions which resulted in removal from the home.
*"Before you may terminate his parental rights under that ground,* you must find to a reasonable certainty, by evidence that is clear, satisfactory, and convincing there were the following six elements present: First. . . ." (Emphasis added.)

The circuit court then instructed the jury with regard to the second ground as follows:

"The second alleged ground for Termination of Parental Rights is that [C.E.W.] substantially neglected or willfully refused to remedy the conditions which resulted in the removal of the children from his home.
*"Before you may terminate his parental rights under that ground,* you must find to a reasonable certainty, by evidence that is clear, satisfactory and convincing that there were the following five elements present: First. . . ." (Emphasis added.) [1]

Each verdict question was phrased as follows:

---

[1] No one questions whether the instructions correctly state the elements of the two statutory grounds, sec. 48.415(2)(a) and sec. 48.415(1)(a). We need not and do not reach this question.

"GROUNDS FOR THE TERMINATION OF PAREN-
TAL RIGHTS OF [C.E.W.] TO [NAME OF CHILD]
HAVE BEEN PROVEN IN THAT:

"THE CHILD . . . .
"——————————YES
"——————————NO
                                    _____,"

FOREMAN/FORELADY

The jury was excused at 7:40 p.m. At 8:10 p.m. the jury asked the following question:[2] "And what will happen to the children and at what age?" The circuit court advised the lawyers that it intended to respond that the judge could not answer the question.

Although the parties offered instructions different from the ones given, they made no objections on the record to the instructions given. Nor did their first set of briefs raise a question about the instructions relating to the grounds for termination.

In reading the instructions, the verdict questions, and the jury's question to the circuit court, this court became concerned that the jury might have inferred from the instructions and the verdict question that C.E.W.'s parental rights to his children would automatically be terminated if the jury found that a ground for termination of parental rights existed.

Because of our concern about the instructions, we requested counsel to submit briefs on the following questions: "1. Is the jury instruction contrary to sec. 48.424, Stats.? 2. If so, does plain error apply?" We shall treat first the question of preservation of error and discretionary review and second the question of whether the instruction misstated the law.

---

[2] The jury also asked three other questions at that time: "Can the judge answer these questions? Why is the Defendant in jail? On what offense?"

C.E.W. asserts that because the County did not object to the instructions at trial, any error in the instructions was waived.

Sec. 805.13 (3) sets forth the statutory requirements for objecting to instructions. Sec. 801.01 (2) provides that chapters 801 to 847 govern procedure and practice in the circuit courts in all civil actions and special proceedings except where different procedure is prescribed by statute or rule. No statute or rule in the Children's Code (ch. 48) provides a procedure different from sec. 805.13 (3) for objecting to instructions. The application of sec. 805.13 (3) is consistent with the purposes and policies underlying the termination proceeding and the statutory procedures set forth in ch. 48 for the fact finding stage of a termination proceeding and is protective of the parent's, child's, and state's interests in the fact finding process. In other cases this court has assumed that chs. 801 to 847 generally apply to ch. 48 proceedings. In *In Matter of E.B.*, 111 Wis. 2d 175, 330 N.W. 2d 584 (1983), for example, the court of appeals, the parties and this court assumed, without discussing the issue, that secs. 805.13 (4) and 972.10 (5) applied to a delinquency hearing.[3] We therefore turn to sec. 805.13 (3) for assistance in the issue before us.

Sec. 805.13 (3) provides that the circuit court shall conduct a conference with counsel outside the presence of the jury to formulate instructions and special verdict questions; that counsel may file motions requesting instructions and verdict questions; that the court shall inform counsel on the record of its proposed action on the motions and of the instructions and verdict it proposes to submit; and that counsel may object to the proposed instructions or verdict "stating the grounds for

---

[3] Secs. 805.13 (4) and 972.10 (5) state that the court shall provide the jury with a complete set of written instructions providing the substantive law to be applied to the case to be decided.

objection with particularity on the record." The statute further provides that "[f]ailure to object at the conference constitutes a waiver of any error in the proposed instructions or verdict." Counsel did request that the instruction conference be reported. The circuit court unfortunately refused to do so. In light of sec. 805.13 (3), the preferable practice is to report the instruction conference in full or, at a minimum, to report a full summary of the conference. See SCR 71.01 adopted Jan. 17, 1985. Although the circuit court refused to have the instruction conference reported, the parties had the responsibility for ensuring that the basis for any objection was put on the record. The County failed to do this.

The guardian ad litem urges that there was no waiver because the submission of alternate correct instructions properly preserved the error for appeal. We are not persuaded by this argument. A party's mere submission of alternate instructions without a particularized objection on the record to the instructions proposed by the court cannot provide a basis for raising the erroneous instruction on appeal as a matter of right. A party's submission of proposed instructions has the effect of notifying the circuit court of an objection to the instructions, but a submission does not explain the basis for the objection and does not aid the circuit court in correcting the instruction if necessary.

We conclude that the County failed to preserve its objection to the erroneous instructions. Failure to object to an instruction constitutes a waiver of the error. *Hamed v. Milwaukee County*, 108 Wis. 2d 257, 271, 321 N.W.2d 199 (1982) ; *Air Wisconsin, Inc. v. North Central Airlines, Inc.*, 98 Wis. 2d 301, 309–317, 296 N.W.2d 749 (1980).

Relying on the "plain error" rule, the County and guardian ad litem maintain that this court may review the instructions even if we find that no objection was made at trial. We recognize that the parties' use of the term "plain error" was in response to the language of this court in its request that the parties brief the issue of whether the "plain error" rule was applicable. "Plain error" is used in relation to evidentiary rules in sec. 901.03 (4), Stats. 1981–82.[4] This case does not involve waiver of an objection to evidence. Rather, this case involves waiver of an objection to an erroneous instruction. In considering an erroneous instruction to which objection was not properly preserved for appellate review, we shall rely on sec. 751.06,[5] just as we did in *Air Wisconsin, supra.*

In *Air Wisconsin*, which like this case involved a party having waived objection to an alleged erroneous instruc-

---

[4] The plain error rule is set forth in sec. 901.03 (4), Stats. 1981–82, which is part of Wisconsin Rules of Evidence. Sec. 901.03 (4) provides that a court is not precluded from "taking notice of plain errors affecting substantial rights although they were not brought to the attention of the judge." The Judicial Council Committee's Note—1974, 40L West's Wis. Stats. Annot. p. 4 (1974), explains that sec. 901.03(4) "is consistent with s. 251.09 [now numbered sec. 751.06]."

[5] Sec. 751.06, Stats. 1981–82, provides as follows:

"**751.06 Discretionary reversal.** In an appeal in the supreme court, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record, and may direct the entry of the proper judgment or remit the case to the trial court for the entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice."

tion, we relied on sec. 751.06 to review the instruction. We said that when this court concludes that the alleged erroneous instruction relates to a pivotal legal issue in the case, we may review the instruction because if the instruction is erroneous, "there is a probable miscarriage of justice because that issue has not been fully or properly tried." This court explained its use of its discretionary power to review a claimed error and to reverse a judgment on the basis of an error to which objection was not properly preserved as follows:

"Resort to sec. 751.06, Stats., is discretionary with this court, and this court does not apply a mechanistic formula to determine whether it should exercise its discretionary power because justice has miscarried. *Lorenz v. Wolff*, 45 Wis. 2d 407, 414, 415, 173 N.W.2d 129 (1970). On the basis of the record before us, we cannot say that defendant would probably win on a retrial, *Savina v. Wisconsin Gas Co.*, 36 Wis. 2d 697, 704, 154 N.W.2d 237 (1967), but we can conclude that the instruction played a significant role in the jury's determination of causal negligence, and that the instruction, if erroneous, prevented the defendant from having a full, fair trial of the issues of the case. . . . We conclude that if the law as to the significant issue of forfeiture of right of way was misstated . . . there was a probable miscarriage of justice because the issue of liability has not been fully or properly tried. Accordingly, we conclude that in the interest of justice we shall review the question posed by the defendant on appeal that the forfeiture-of-right-of-way instruction is a misstatement of the law." *Air Wisconsin, Inc. v. North Central Airlines, Inc.*, 98 Wis. 2d 301, 317–18, 296 N.W.2d 749 (1980).[6]

[6] Another approach we have taken in cases in which instructions are alleged to be erroneous is to say, without citing sec. 751.06, that even though a party did not make timely objection in the circuit court and thus does not have the right to raise the issue on appeal, this court, in its discretion, may elect to

■ In the case presently before this court, the instructions allegedly twice misstated the law on the key issue in the case. The jury asked a question indicating its concern for the disposition of the children, a subject about which the instructions were allegedly misleading. If the instructions in this case are erroneous, the key issue, that is, whether the County proved facts upon which the jury could conclude that a ground for termination of parental rights exists, would not have been fully or properly tried. Accordingly, in the interest of justice, we will consider whether the instructions misstate the law.

■ The heart of the bifurcated termination proceedings is contained in sec. 48.424(3), Stats. 1981–82, which reads:

review the error regardless of waiver, where the "error is so plain or fundamental as to affect substantial rights of the defendant." *Claybrooks v. State,* 50 Wis. 2d 79, 85, 183 N.W.2d 139 (1971). See also *Werner v. State,* 66 Wis. 2d 736, 751, 226 N.W.2d 402 (1975) (citing *Brown v. State,* 59 Wis. 2d 200, 214, 207 N.W.2d 602 (1973), and *Lampkins v. State,* 51 Wis. 2d 564, 573, 187 N.W.2d 164 (1971)).

More recently this court has said that if the challenged instructions go "directly to the integrity of the fact finding process," the party's "failure to object at trial should not preclude him from raising them on appeal." *State v. Baldwin,* 101 Wis. 2d 441, 445–46, 304 N.W.2d 742, 746 (1981). See also *Manson v. State,* 101 Wis. 2d 413, 417, n. 2, 304 N.W.2d 729 (1981); *State v. Cheers,* 102 Wis. 2d 367, 377, n. 7, 306 N.W.2d 676 (1981). In *Cheers, Manson* and *Baldwin* the court reviewed the alleged error and found no error. The doctrines of discretionary review and discretionary reversal are at one and the same time separate but related doctrines.

Since court reorganization in 1978, this court in its discretionary power to review a decision of the court of appeals may decide to review an issue not properly preserved for appeal as of right in the circuit court.

"(3) If the facts are determined by a jury, the jury may only decide whether any grounds for the termination of parental rights have been proven. The court shall decide what disposition is in the best interest of the child."

The instruction read to the jury contravenes this statutory provision. In this case the jury instructions strongly implied that the jury had the authority to terminate parental rights and was making the termination decision. The statute makes clear that the jury does not make the dispositional decision. We conclude that the instructions given were a misstatement of law.

C.E.W. asserts that even if the instructions which the circuit court read to the jury were erroneous and contrary to sec. 48.424, the error was corrected by the written instructions which the circuit court submitted to the jury pursuant to sec. 805.13(4), Stats. 1981–82. C.E.W. maintains that the typed jury instructions which went into the jury room contained three additional words and correctly stated the law as follows: "Before you may *find grounds to* terminate his parental rights under that ground, you must find to a reasonable certainty that there were the following five elements present. . . ." The record before us contains typed jury instructions but does not indicate whether that was the version sent to the jury. Furthermore, the version appearing in the record does not contain the phrase which C.E.W. states was in the typed instructions. Finally the guardian ad litem and counsel for the County made no mention of this alleged verbal error made by the circuit court in reading the instructions, even though they mentioned other verbal errors made by the court in reading the instructions. We conclude that the record does not substantiate counsel's claim that the written instruction included three additional words, and we need not determine whether cor-

rect written jury instructions can cure erroneous oral jury instructions.

C.E.W. further asserts that the enumeration of the elements of the two grounds for termination and the jury instructions, read in their entirety, cure any defect in these particular instructions. C.E.W. does not, however, point to any language in the instructions that corrects the misstatement of law, and we can find none.

Having reviewed the instructions because they went to the heart of the issue before the jury and having found the instructions to be a misstatement of law, we reverse the judgment of the circuit court and remand the matter to the circuit court for a new hearing. Sec. 751.06, Stats. 1981–82. We turn now to issues which bear on the guardian ad litem's role at the fact finding hearing.

## II.

The court of appeals stated the certified issue as follows: "whether in proceedings for the termination of parental rights the best interests of the child standard is to be applied throughout the entire proceeding." More specifically, the issue presented in this case is whether the best interests of the child standard is to be applied at the fact finding stage of the termination proceedings.

The legislative purposes of the Children's Code, as set forth in sec. 48.01(2), states that the best interests of the child shall be of paramount consideration:

"(2) This Chapter shall be liberally construed to effect the objectives contained in this section. *The best interests of the child shall always be of paramount consideration,* but the court shall also consider the interest of the parents or guardian of the child, the interest of the person or persons with whom the child has been placed for adoption and the interests of the public." (Emphasis supplied.)

At oral argument, the guardian ad litem and C.E.W. expressed agreement with the circuit court's ruling that the "best interests" standard does not apply at, and is not paramount in, the fact finding stage of a termination proceeding.[7] The County asserted that the best interests standard should be applied and is paramount in the entire termination proceeding.

We discuss this issue because it may arise on remand and because it serves to put the role of the guardian ad litem in context.

A termination of parental rights hearing is a bifurcated procedure: The initial stage is a fact finding hearing which determines whether grounds for terminating parental rights exist. Secs. 48.424, 48.427, Stats. 1981–82. The petitioner must prove the allegations in the petition for termination by "clear and convincing evidence." Sec. 48.31(1). If the jury is the fact finder, the jury decides only whether grounds for termination have been proven. Sec. 48.424(3).

In the second stage of the proceeding the circuit court decides the disposition of the child. Even if the jury finds grounds for termination, the circuit court, at the second stage, the dispositional stage, of the proceedings, need not terminate parental rights. *In Interest of J.L.W.*, 102 Wis. 2d 118, 130–31, 306 N.W.2d 46 (1981); *Termination of Parental Rights to Kegel*, 85 Wis. 2d 574, 582, 271 N.W.2d 114 (1978). Sec. 48.424(3) states that "[t]he court shall decide what disposition is in the best interest of the child." Further, sec. 48.426 provides that,

---

[7] According to the certification of the court of appeals, the County and guardian ad litem contend that the best interests standard should be applied throughout the entire termination proceeding, while C.E.W., the father, urges that the best interests standard applies only at the dispositional stage of the termination proceeding.

in making the dispositional decision, the court shall consider the standard and factors enumerated in the section, which include the standard that "[t]he best interests of the child shall be the prevailing factor considered by the court in determining the disposition of all proceedings under this subchapter." Sec. 48.426(2). *Termination of Parental Rights to T.R.M.*, 100 Wis. 2d 681, 687, 303 N.W.2d 581 (1981). Therefore, in contrast to the language in sec. 48.01(2), the language of secs. 48.424 (3) and 48.426(2) appears to limit the "best interests" standard to the dispositional stage in the termination proceeding. We conclude that at the fact finding stage, the fact finder—here the jury—does not consider the best interests of the child standard.[8] This conclusion has a bearing on the nature of the questions addressed to witnesses and on the nature of the summation to the jury as we shall explain later.

## III.

The third issue relates to the extent to which the children may, through their guardian ad litem, participate in the fact finding stage of the proceedings.[9]

---

[8] The commentators have similarly interpreted the statutes. *See* Hayes and Morse, *Adoption and Termination Proceedings in Wisconsin: Straining the Wisdom of Solomon*, 66 Marq. L. Rev. 439, 481–82 (1983); Cooper and Nelson, *Adoption and Termination Proceedings in Wisconsin: A Reply Proposing Limiting Judicial Discretion*, 66 Marq. L. Rev. 641, 661 (1983).

Our previous decisions treat the best interests standard as applicable after the statutory grounds for termination are determined. See *State Dept. of Public Welfare v. Johnson*, 9 Wis. 2d 65, 75, 100 N.W.2d 383 (1960); *In Interest of J.L.W.*, 102 Wis. 2d 118, 130–131, 306 N.W.2d 46 (1981).

[9] C.E.W. claims that the County has no standing to raise this issue. We conclude that both the County and the guardian ad litem objected at trial to the limitations placed on the guardian ad litem's role by the circuit court and that the County, a party

The circuit court permitted the guardian ad litem to question prospective jurors at *voir dire* but did not permit him to make peremptory strikes. The guardian ad litem was also allowed to examine witnesses and to present witnesses, but the circuit court precluded the guardian ad litem from making an opening or closing statement to the jury. The County and the guardian ad litem argue that the circuit court unduly restricted the guardian ad litem's participation at the fact finding hearing and urge that the guardian ad litem is legal advocate for the child in a termination matter and should have the full rights and responsibilities of an adversary counsel for a party to litigation.[10] In contrast, C.E.W. does not argue that the circuit court should have totally excluded the guardian ad litem from participation in the fact finding hearing, but he apparently concludes that the extent of activities permitted the guardian ad litem in this case was sufficient.

The circuit court explained its decision limiting the participation of the guardian ad litem as follows:

"We are not dealing specifically with the interest of the children at this time, we're dealing with the termination of the parental rights of [C.E.W.], the natural

aggrieved by the final judgment, secs. 48.47(1), 48.43(6), may assert an error involving the role of the guardian ad litem which may have affected the outcome.

[10] The statutes appear to distinguish between a legal counsel and a guardian ad litem. *Compare* sec. 48.02(8) and sec. 48.23. The parties do not discuss this distinction, and neither do we. We recognize that the nature of the duties, responsibilities, and powers of a guardian ad litem depend on the nature of the proceeding, *e.g.*, custody, termination, etc. The guardian ad litem has been viewed as an advocate for the child, as a "guardian" representing the general welfare of the child, and as an officer of the court. For a discussion of and proposals concerning the role of guardians ad litem, *see* Hayes & Morse, *Adoption and Termination Proceedings in Wisconsin: Straining the Wisdom of Solomon*, 66 Marq. L. Rev. 439, 446–49, 491–92 (1983).

father of the children. Whether that is in the interest of the children or not in the interest of the children, it is [C.E.W.'s], the natural father's day in Court.

"The Court would feel that the only arguments that could be presented by the Guardian ad Litem and [sic] closing argument would either echo the position of the petitioner in that [C.E.W.'s] rights should be terminated or the position of the Respondent that they should not be terminated. Obviously, based on the Guardian ad Litem's position as to the interest of the children, the Guardian ad Litem has a specific function. . . . He's here to make sure that the proper evidence is presented. If he need call witnesses to make sure the proper evidence is presented, he may do so. Obviously, he has a responsibility to a clear record as to the rights and interests of the children, . . . and I don't know how to separate that from the issues before the Court.

"The issues are very clear, shall the rights of the Respondent be terminated. . . . It's a difficult question and obviously [the Guardian ad Litem] has an important part in this whole proceeding, but the Court's going to treat this as an adversarial proceeding between the Respondent, [C.E.W.] as the natural father, and the Petitioner [the State] represented by Mr. Lepley.

". . .

"Under my understanding of the law . . . it seems that the rights of the parent are what we're dealing with now, not the rights or the interests of the children. We have to clear that hurtle [sic] before we can be fully concerned with the rights of the children."

In certifying the matter to this court, the court of appeals analyzed the role of the guardian ad litem at the fact finding hearing as follows: "If the 'best interests' standard applies at the fact-finding stage, then the guardian ad litem's role must include all of the rights of counsel that a party to the litigation is entitled. If the standard is applicable only at the dispositional stage, then the trial court's limitation of the guardian ad litem's role was proper." Court of appeals certification, at 6.

We believe that the circuit court and court of appeals confounded two issues. One issue is how the guardian ad

litem is to represent the interests of the child. The second issue is whether the "best interests of the child" shall be of paramount consideration in all sec. 48.424 hearings. The circuit court apparently concluded that because the best interests of the child standard is not applicable to or paramount in the fact finding hearing, the guardian ad litem's participation in the proceeding is limited. Although we have concluded that the best interests of the child standard does not apply to the fact finding hearing, we also conclude the guardian ad litem can represent the interests of the child in a fact finding proceeding by helping develop the facts as they relate to whether grounds for termination exist. To determine the extent to which the guardian ad litem may participate in the fact finding hearing, we look to ch. 48 and to the interests of the state, the parents, and the child in the termination proceeding and the statutory protections afforded these interests.

The statutes relating to termination of parental rights recognize that the state, the parents, and the child have an interest in the fact finding process.

The state has an interest because it has a responsibility to protect the child. See Note, *State Intrusion into Family Affairs: Justifications and Limitations,* 26 Stan. L. Rev. 1383 (1974) ; Note, *Termination of Parental Rights—Suggested Reforms and Responses,* 16 J. Fam. L. 239 (1977–78). Thus the state is entitled to bring an action to terminate parental rights. Secs. 48.25, 48.09, Stats. 1981–92. Given the array of public resources which the state may marshal to prove its case, however, *cf. Santosky v. Kramer,* 455 U.S. 745, 758–60 (1982), the state's powers must of necessity be circumscribed. Accordingly, in *In re Termination of Parental Rights to M.A.M.,* 116 Wis. 2d 432, 436–7, 342 N.W.2d 410 (1984), we stated that:

". . . the power of the state to terminate the parental relationship is an awesome one, which can only be exercised under proved facts and procedures which assure that the power is justly exercised. The parental right is accorded paramouncy in most circumstances and must be considered in that light until there has been an appropriate judicial proceeding demonstrating that the state's power may be exercised to terminate that right."

The parents have an interest in the termination proceeding stemming from their fundamental right to rear a child. The parents' interests and rights are vigorously protected in a proceeding for the involuntary termination of parental rights. The statutes, for example, provide that a parent be represented by counsel at a termination proceeding. A parent under 18 cannot waive counsel. Sec. 48.23(2)(a), (4). A parent may request a jury trial. Sec. 48.31(2), 48.422(4). This court has recognized the strong interests of the parents and the interest in protecting the sanctity of the family in termination and adoption proceedings. *See In Interest of Baby Girl K,* 113 Wis. 2d 429, 442–48, 335 N.W.2d 846 (1983), *appeal dismissed,* 104 S. Ct. 1262 (1984); *In Interest of J.L.W.,* 102 Wis. 2d 118, 132–136, 306 N.W.2d 46 (1981); *Ponsford v. Crute,* 56 Wis. 2d 407, 413, 202 N.W.2d 5 (1972). We have said that because a termination proceeding "implicates the fundamental rights of a parent[,] . . . [t]he rights of the parent must be accorded a high order of respect and must be considered paramount until circumstances show that the parent has forfeited these rights." *In re Termination of Parental Rights to T.R.M.,* 100 Wis. 2d 681, 689, 303 N.W.2d 581 (1981).

The child, too, has an interest in a termination proceeding because of her or his right to traditional parental bonds, including the right to financial, physical, and emotional care. *See Santosky v. Kramer,* 455 U.S.

745, 754, n. 7, 760, n. 11 (1982). Therefore, at the same time the statutes protect the parent they also protect the child. The court is required to appoint legal counsel or a guardian ad litem for the child. Sec. 48.23 (1) (d). The guardian ad litem is "to protect the interest of the child." Sec. 48.02 (8). The statute permits a child's guardian ad litem (apparently the child's guardian ad litem who was appointed before the termination proceedings began) to initiate a proceeding for the termination of parental rights. Secs. 48.42 (1), 48.25 (1). The petition to terminate and a summons must be served on the guardian ad litem for the child and also on the child if the child is 12 years of age or older. Sec. 48.42 (2) (c), (e). Furthermore, the child may request a jury trial. Secs. 48.31 (2), 48.422 (4).

As previously indicated, two questions arose in this case about the role of the guardian ad litem. The first concerns the guardian ad litem's right to strike jurors. According to secs. 48.31 (2) and 48.424 (2), the selection of the jury in the termination proceedings is governed by chs. 756 and 805.

Sec. 805.08 (3) in ch. 805 provides that each "party"[11] is entitled to peremptory challenges and that the:

---

[11] Secs. 48.42 and 48.422 which set forth the procedure to be followed in initiating the termination proceedings and in the hearings on the petition can be read to refer to the child and the guardian ad litem as "parties." The word "party" is not defined, and it is unclear if the word is intended to confer the same party status on the child and guardian ad litem as the term does in civil procedure statutes. Ordinarily the guardian ad litem is not considered a party to a proceeding. The statutes do, however, confer rights on the child which are generally conferred on a party to litigation. For example, the child may request a jury trial, secs. 48.31 (2), 48.422 (4), (5) and may request substitution of a judge, secs. 48.422 (5), 48.29 (1). Although the circuit court may exclude the child from the hearing, sec. 48.424 (2) (a), the statutes do not authorize the circuit court to exclude the guardian ad litem, the child's representative, from the hearing.

". . . parties to the action shall be deemed 2, all plaintiffs being one party and all defendants being the other party, except that in case where 2 or more defendants have adverse interests, the court, if satisfied that the due protection of their interests so requires, in its discretion, may allow peremptory challenges to the defendant or defendants on each side of the adverse interests. . . ."

The parties to a termination proceeding are not referred to as plaintiffs and defendants. The petitioner is analogous to the plaintiff, and the parent, to the defendant. The question is whether the other persons, like the child, who participate in a termination proceeding should, depending on his or her position on the merits of whether grounds for terminationexist, be viewed as a party to the action and as a plaintiff or defendant for purposes of peremptory challenge. In this case, as we understand it, the guardian ad litem has aligned himself with the petitioner (County) in the fact finding stage. In this situation the children might be treated as plaintiffs for purposes of selecting the jurors. Applying sec. 805.08(3) in this case, as sec. 48.31 appears to direct, would mean that the County and the children are several plaintiffs but one party and would therefore share peremptory challenges. *Cf. Keplin v. Hardware Mut. Cas. Co.,* 24 Wis. 2d 319, 329–330, 129 N.W.2d 321, 130 N.W. 2d 3, *reh'g denied,* 24 Wis. 2d 335, 130 N.W.2d 335 (1964).

Allowing the guardian ad litem to exercise peremptory challenges comports with the purposes and policies underlying the termination proceeding and the statutory procedures set forth for the fact finding stage of a termination proceeding in secs. 48.42, 48.422, and 48.31, and especially in secs. 48.31(2) and 48.422(4), (5), which empower the child to request a jury. If the child has the right to demand a jury trial, it makes sense to allow

the child full participation in the selection of the jury insofar as this participation is not precluded by law. Such participation, however, should not depend on whether it was the child or parent who requested trial by jury. We conclude that in this case the guardian ad litem should have been permitted the right to share in the County's peremptory challenges pursuant to sec. 805.08(3). The circuit court erroneously denied him the right.

The second question relates to whether the guardian ad litem may sum up to the jury. Here the circuit court refused to allow the guardian ad litem to sum up for the jury, reasoning that the guardian ad litem would in large part merely echo the position of the County. It is apparent that the circuit court was also concerned that the guardian ad litem—as representative of the children —might evoke the sympathy of the jury in support of the position that the evidence establishes grounds for termination, thereby disturbing the balance of interests among the state, parent, and child which the legislature had so carefully constructed.

It is generally assumed that the right to be represented by counsel embraces the right of counsel to argue the case to the court or jury. Indeed, the right of a litigant to address the jury on the facts is considered an important and effective aid to the fact finder in ascertaining the truth. The object of summation is the "elucidation of the truth . . . by full and fair forensic discussion." Forensic strife, our court has said, is a mighty method to ascertain the truth. *Brown v. Swineford*, 44 Wis. 282, 290, 293 (1878).

To the extent that the guardian ad litem's summation is persuasive, the summation may be detrimental to the parent's position. But the fact that the guardian ad litem takes a position contrary to that taken by the parent does not make the conduct of the guardian ad litem

unduly or unfairly prejudicial to the interests of the parent.[12]

Sec. 805.10 governs summation. As we noted earlier, sec. 801.01(2) provides that chs. 801 to 847 govern procedure and practice in the circuit courts in all civil actions and special proceedings except where different procedure is prescribed by statute or rule. Chapter 48 does not address the question of summation before the jury. No provision of chapter 48 provides a procedure different from sec. 805.10 regarding summation before the jury. The application of sec. 805.10 is consistent with the purposes and policies underlying the termination proceeding and the statutory procedures set forth in ch. 48 for the fact finding stage of a termination proceeding and is protective of the parent's, child's, and state's interests in the fact finding process. We therefore turn to sec. 805.10 for assistance in the issue before us.

Sec. 805.10 provides that "*[u]nless the judge otherwise orders* . . . not more than 2 attorneys on each side shall sum up to the jury." (Emphasis added.) This section embodies the long-accepted concept that the litigants have a basic right to have fact issues argued orally to the jury. The statute gives the court the power to limit the number of attorneys who will sum up before the jury. Sec. 805.10 does not, however, grant the circuit court power to limit to fewer than two the number of attorneys arguing to the jury on each side.[13] In this

---

[12] One case addressed the role of guardian ad litem, concluding that the guardian ad litem's advocacy of termination did not violate the parents' due process rights. *In re Welfare of Harney,* 19 Wash. App. 85, 574 P.2d 395, *reh'g denied* (1978). The Washington court did not discuss the particular duties or rights of the guardian ad litem in carrying out that advocacy.

[13] The statutory language of sec. 805.10 might be interpreted to grant the circuit court discretion to order fewer than 2 attorneys for each side to sum up to the jury. On the basis of the legislative history of the language of the statute, we conclude

case the County had one attorney argue to the jury. It appears that the County and the children are on the same "side," as that term is used in sec. 805.10, and that two attorneys were entitled to argue on the County's side.

Accordingly, we conclude that the guardian ad litem for the children has a right, pursuant to sec. 805.10, to argue the facts to the jury at the fact finding stage. The guardian ad litem cannot, of course, invoke the best interests of the child in statements to the jury.

## IV.

Finally we consider the question of whether the circuit court erred in instructing the jury concerning the five-sixths verdict rule. Sec. 805.09, Stats. 1981–82, provides: "A verdict agreed to by five-sixths of the jurors shall be the verdict of the jury. If more than one question must be answered to arrive at a verdict on the same claim, the same five-sixths of the jurors must agree on all the questions." The parties apparently assumed that sec. 805.09 governs the fact finding stage. On the basis of the reasoning we have set forth previously with regard to the applicability of chs. 801 to 847 in ch. 48 proceedings, we conclude that we should turn to sec. 805.09 for assistance in the issue before us.

At the close of evidence, the circuit court, over the County's objection, instructed the jury using the pattern civil jury instruction relating to the five-sixths verdict rule. The jury was instructed as follows:

---

that the section means that the circuit court has power to allow more than 2 per side. See Rules of Practice of the Supreme Court, Rule XXII, 1914 Wis. Annot. p. 1738; Circuit Court Rules and Notes, Rule XXII, 1930 Wis. Annot. p. 1825; sec. 270.205, Stats. 1933; Rule 270.205 Court Rules, 212 Wis. xiv (1934); sec. 270.205, Stats. 1973; Judicial Council Committee's Note, 1974 to sec. 805.10, 67 Wis. 2d 701.

"The law provides that agreement by ten or more of the jurors is sufficient to become the verdict of the jury. Jurors have a duty to consult with one another and to deliberate for the purpose of reaching agreement. If you can do so consistently with the duty each of you owes as a juror, at least the same ten jurors should concur in all the answers made. I ask you to be unanimous if you can.

"At the foot of the verdict you will find a place provided where dissenting jurors, if there be any, will sign their names and state the answer or answers with which they do not agree. Either the blank lines or the space below them may be used for that purpose." Wis. J.I.— Civil No. 180 (1974)

At the close of evidence, the circuit court submitted six verdict forms to the jury, a separate form for each of the two statutory grounds alleged and for each of the three children.

The jury returned unanimous verdicts for each child, finding that C.E.W. had not substantially neglected or willfully refused to remedy the conditions which resulted in the removal of the children from the home and that C.E.W. had not abandoned his children.

The County argues that the instruction as given was erroneous and prejudicial because the instruction that "at least the same ten jurors should concur in all the answers made" left the jury with the belief that the same jurors must make the same decision on all verdicts. Because no verdict was dependent in any way on any other verdict, the County urges that there was no logical reason to impose such a requirement.

■
We agree with the County that the six verdicts were independent, each verdict being separate and distinct from the others. See *Giese v. Montgomery Ward, Inc.,* 111 Wis. 2d 392, 404, 331 N.W.2d 585 (1983); *Utecht v. Steinagel,* 54 Wis. 2d 507, 518, 196 N.W.2d 674 (1972);

*Scipior v. Shea,* 252 Wis. 185, 190, 31 N.W. 2d 199 (1948). Thus there was no logical reason for the circuit court to impose the requirement of unanimity across verdicts. In light of our reversal of the judgment on other grounds, we need not determine whether the erroneous instruction was prejudicial.

For the reasons set forth, we reverse the judgment of the circuit court and remand the cause to the circuit court for a new hearing.

*By the Court.*——Judgment reversed; cause remanded.