# COURT OF APPEALS
## DECISION
## DATED AND FILED

## June 7, 2023

Sheila T. Reiff
Clerk of Court of Appeals

## NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2022AP1179**
**2022AP1180**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2021TP133
2021TP134

**IN COURT OF APPEALS**
**DISTRICT I**

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO H.S., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

   V.

S.S.,

      RESPONDENT-APPELLANT.

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO S.S.-A., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

   V.

S.S.,

**RESPONDENT-APPELLANT.**

APPEALS from orders of the circuit court for Milwaukee County: ELLEN R. BROSTROM and JOSEPH R. WALL, Judges. *Affirmed*.

¶1 BRASH, C.J.[1] S.S. appeals orders terminating her parental rights to her children, Harold and Sean,[2] and orders denying her postdisposition motion. S.S. argues that her no contest pleas during the grounds phase for the termination of parental rights (TPR) petitions was not knowing, intelligent, and voluntary because her plea colloquy was defective. Specifically, she argues that during the plea colloquy, the circuit court[3] (1) failed to accurately advise her of the potential dispositional outcomes; and (2) set forth the wrong statutory standard for the dispositional phase of the TPR proceedings. We conclude that S.S.'s claim fails as to the first alleged plea colloquy defect. We further conclude that S.S.'s postdisposition motion set forth a prima facie case for plea withdrawal as to the second alleged plea colloquy defect. However, the State proved by clear and

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

Pursuant to WIS. STAT. RULE 809.107(6)(e), this court is required to issue a decision within thirty days after the filing of the reply brief. We may extend the deadline pursuant to WIS. STAT. RULE 809.82(2)(a) upon our own motion or for good cause. *See **Rhonda R.D. v. Franklin R.D.***, 191 Wis. 2d 680, 694, 530 N.W.2d 34 (Ct. App. 1995). On our own motion, we will extend the decision deadline through the date of this decision.

[2] For ease of reference and to protect the confidentiality of these proceedings, we use pseudonyms to refer to the children.

[3] The Honorable Ellen R. Brostrom presided over both TPR proceedings and entered the orders terminating S.S.'s parental rights; we refer to Judge Brostrom as the circuit court. The Honorable Joseph R. Wall presided over the hearings on the postdisposition motions and issued the decisions and orders denying the motion; we refer to Judge Wall as the postdisposition court.

convincing evidence that S.S. knowingly and intelligently waived the right to contest the allegations in the petitions. Accordingly, we affirm the orders terminating S.S.'s parental rights, and the orders denying her postdisposition motion.

## BACKGROUND

¶2 S.S. is the birth mother of Harold and Sean, who were born in October 2009 and September 2014, respectively. Prior to the TPR proceedings in this case, the children were adjudged to be in need of protection or services (CHIPS) and were removed from S.S.'s custody, Harold in November 2017 and Sean in January 2019. The CHIPS orders cited concerns regarding abuse, neglect, and risk of neglect.

¶3 In June 2021, the State filed petitions[4] to terminate S.S.'s parental rights to her children. The petitions alleged continuing CHIPS and failure to assume parental responsibility as grounds for the TPRs, pursuant to WIS. STAT. §§ 48.415(2) and (6).

*Attempted Virtual Plea Colloquy*

¶4 The circuit court held a "check in" hearing on October 18, 2021, and was informed that the case was "still in a trial posture." Later that day, however, the parties reconvened, and counsel informed the court that S.S. desired to enter no

---

[4] The TPR petitions also set forth grounds to terminate the parental rights of Harold's biological father and Sean's adjudicated father. The circuit court entered orders terminating the fathers' parental rights; those orders are not on appeal here, and this decision focuses on the facts and the proceedings as they relate only to S.S.

contest pleas with respect to the ground of failure to assume parental responsibility.

¶5    In response, the circuit court began to conduct a plea colloquy. After the court ascertained various facts relating to S.S. and her background, the following exchange occurred:

> THE COURT: Right.  So … remember at the beginning of the case we talked about how it has two halves.  In the first half, the State has to prove there's legal reason or grounds to terminate your parental rights.  In the second half, if grounds are found, I would have to decide if it's in the children's best interest to do so.  Do you understand that?
>
> [S.S.]: In the first half the State would have to prove it.  In the second half, it would be upon you and part of your decision, right?
>
> THE COURT:  Yes.  But it's still the State's burden to prove it's in the children's best interest.  So I just want to talk about the consequence from a legal processing standpoint if I accept this no contest plea.  What it means is you won't have the jury trial, but you will have the disposition contest.  Do you understand that?
>
> [S.S.]:  Um, a little bit.

¶6    At that point, the circuit court acknowledged that it was "getting late," and asked counsel if the parties could reconvene at a later date in order for counsel to better prepare S.S. for the plea colloquy.  The parties agreed, and the matter was rescheduled.

*In-Person Plea Colloquy*

¶7    The parties returned for an in-person plea hearing on October 21, 2021.  The circuit court informed S.S. that she had an absolute right to a trial regarding grounds, and that by entering no contest pleas to grounds, S.S. was only

giving up her "fight" against whether the State could prove grounds by clear, convincing, and satisfactory evidence. The court also reiterated its previous statements that during the dispositional phase of a TPR, the State carried a burden. This time, however, the court informed S.S. that the State's burden would be by a "reasonable certainty." Notably, on at least five occasions, the court mentioned the best interests of the child standard.[5]

¶8 Additionally, the circuit court informed S.S. about the two potential outcomes at the dispositional hearing assuming grounds were met—termination of parental rights, or dismissal of the TPR petitions. The court went on to note several alternative outcomes *if* the court ultimately decided to dismiss the TPR petitions, which included: 1) S.S.'s children could be immediately returned to her care without any involvement from child welfare authorities; 2) the court could leave the children in foster care or with relatives and "ask that the CHIPS case be reinvigorated;" or 3) the court could order a "transfer of guardianship." S.S. confirmed to the court that this made sense and that she understood the dispositional alternatives listed by the court.

¶9 The circuit court confirmed with both S.S. and her attorney that her no contest pleas were knowing, intelligent, and voluntary, and the court ultimately accepted S.S.'s no contest pleas.

---

[5] In Wisconsin, TPR proceedings follow a bifurcated procedure. The first stage is the grounds phase, consisting of a fact-finding hearing in which the fact finder determines whether there are grounds to find the parent unfit. *See* WIS. STAT. § 48.415. During the grounds phase, the fact finder "does not consider the best interests of the child standard." **Waukesha Cnty. DSS v. C.E.W.**, 124 Wis. 2d 47, 61, 368 N.W.2d 47 (1985). If the parent is found to be unfit during the grounds phase, the case proceeds to the dispositional stage, in which the court considers whether it is in the best interests of the child or children to terminate the parent's rights. *See* WIS. STAT. § 48.426(2); *see also* **C.E.W.**, 124 Wis. 2d at 60-61.

¶10 The case then proceeded to the dispositional phase of the TPR proceedings. The circuit court took judicial notice of the underlying CHIPS documentation for "prove up," and found that grounds had been met by the State. After hearing testimony from the children's foster parent, the case manager, and S.S, the court ultimately found that it was in the children's best interests to have S.S.'s parental rights terminated, and TPR orders were filed in April of 2022.

*Motion for Plea Withdrawal and Hearing on Motion*

¶11 In August 2022, S.S. filed a motion for postdisposition relief alleging that during the plea colloquy, the circuit court did not inform her of the correct statutory standard that it would apply at the dispositional hearing, and that she was given an "inaccurate explanation" of potential dispositions.[6] S.S. argued that these defects were sufficient to show a prima facie case for plea withdrawal. S.S. further argued that the State could not meet its burden by clear and convincing evidence that her no contest pleas was nonetheless knowing, intelligent, and voluntary.

¶12 The postdisposition court held a hearing on the motion and reviewed the pertinent portions of the plea hearing transcript, and heard oral argument from the parties. Upon reviewing the relevant information, the postdisposition court found that S.S. failed to establish a prima facie case because the court "adequately

---

[6] To the extent S.S. raised an ineffective assistance of counsel claim before the postdisposition court, or that her no contest pleas were involuntary for reasons outside the plea colloquy, she appears to have abandoned any such arguments on appeal because she did not brief those issues. We therefore deem any other argument raised before the postdisposition court, but not presented on appeal, abandoned. *See, e.g.*, **A.O. Smith Corp. v. Allstate Ins. Cos**., 222 Wis. 2d 475, 491-92, 588 N.W.2d 285 (Ct. App. 1998) (issues raised before the trial court but not raised on appeal are deemed abandoned).

6

explained all of the alternatives…."[7]  With regard to S.S.'s argument that the circuit court misadvised S.S. about the statutory standard used during the dispositional hearing, the postdisposition court stated:  "there is no burden of proof at [the] dispositional hearing as to the best interest.…  [B]est interest is best interest."  However, the postdisposition court also found that the circuit court correctly mentioned the best interests on several occasions during the plea colloquy.  Thus, consistent with the reasoning set forth in *State v. T.A.D.S.*, No. 2018AP2173, unpublished slip op. (WI App June 18, 2019),[8] the postdisposition court found that the "[c]ourt's comments, although incorrect, [were] irrelevant in light of its emphasis … on just the best interest standing alone …."  Accordingly, the court entered orders for each child denying S.S.'s postdisposition motion for plea withdrawal.  S.S. now appeals.

## DISCUSSION

¶13  On appeal, S.S. renews her arguments that the circuit court, during its plea colloquy, improperly informed her of the potential dispositional outcomes, and that the court informed her of the wrong statutory standard used at the dispositional phase of a TPR.  We address each of her arguments in turn.

---

[7] Despite its finding, the postdisposition court conducted an evidentiary hearing in which S.S. and S.S.'s former attorney were allowed to testify.  After hearing closing arguments, considering the testimony, and reviewing the relevant transcripts, the postdisposition court determined that the State had met its burden to prove that S.S.'s no contest plea was made knowingly, voluntarily, and intelligently.

[8] *See* WIS. STAT. RULE 809.23(3)(b) (authorizing citation of certain unpublished opinions for their persuasive value).  We discuss this case in greater detail below.

## I. Legal Standards for TPR Pleas and Plea Withdrawals

¶14   A no contest plea in a TPR case must be entered knowingly, voluntarily, and intelligently. *Kenosha Cnty. DHS v. Jodie W.*, 2006 WI 93, ¶24, 293 Wis. 2d 530, 716 N.W.2d 845.   Under Wisconsin law, before accepting a parent's no contest plea in the grounds stage of TPR proceedings, the circuit court must engage the parent in a personal colloquy to "determine that the admission is made voluntarily with understanding of the nature of the acts alleged in the petition and the potential dispositions."   WIS. STAT. § 48.422(7)(a); *Oneida Cnty. DSS v. Therese S.*, 2008 WI App 159, ¶5, 314 Wis. 2d 493, 762 N.W.2d 122. Additionally, "the parent must be informed of the statutory standard the court will apply at the second stage.   That is, the court must inform the parent that '[t]he best interests of the child shall be the prevailing factor considered by the court in determining the disposition....'"   *Therese S.*, 314 Wis. 2d 493, ¶16 (citation omitted; alterations in *Therese S.*).   However, the circuit court need not inform a parent of every detail implicated by the no contest plea, because such a requirement would be unduly burdensome. *See id.*, ¶17.

¶15   "When a parent alleges a plea was not knowingly and intelligently made, the *Bangert* analysis applies."[9] *Therese S.*, 314 Wis. 2d 493, ¶6.  First, "the parent must make a prima facie showing that the circuit court violated its mandatory duties and must allege the parent did not know or understand the information that should have been provided at the hearing."  *Id*.  If the parent makes a prima facie showing, "the burden then shifts to the [State] to demonstrate

---

[9] *See State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986).

by clear and convincing evidence that the parent knowingly and intelligently waived the right to contest the allegations in the petition." *Id*.

¶16     Whether a parent "has presented a prima facie case by pointing to deficiencies in the plea colloquy and sufficiently alleging [he or] she did not know or understand information that should have been provided in the colloquy is a question of law we review independently." *Id.*, ¶7.  Whether the State established that a parent knowingly, voluntarily, and intelligently waived the right to contest that grounds existed to terminate his or her parental rights raises a question of constitutional fact.  *See* ***State v. Bangert***, 131 Wis. 2d 246, 283, 389 N.W.2d 12 (1986).  We review constitutional questions independent of the circuit court.  ***Id.*** However, "[w]e will uphold the circuit court's findings of evidentiary or historical facts unless the findings are 'contrary to the great weight and clear preponderance of the evidence.'" ***Jodie W.***, 293 Wis. 2d 530, ¶28 (citations omitted).

## II.  Circuit Court's Statements Regarding Potential Dispositional Outcomes

¶17     S.S. first takes issue with the dispositional outcomes the circuit court explained to S.S. if it ultimately did not terminate S.S.'s parental rights.  The court explained as follows:

> THE COURT:  [I]f the [c]ourt did not ultimately terminate your parental rights, then the petition would be dismissed, and a different alternative could be pursued.  Do you understand that?
>
> [S.S]:  Yes.
>
> THE COURT:  So among the alternatives would be an immediate return to your care without any involvement from child welfare authorities.  And if [the court] thought that was safe and appropriate, [the court] could do that, or [the court] could leave the children in foster care, or with relatives and ask that the CHIPS case be reinvigorated.  Or

9

we could do a transfer of guardianship. There are a number of alternatives that could happen at that point and time.

Does that make sense?

[S.S.]: Yes, ma'am.

THE COURT: So again just to review in that second half, if the [c]ourt did not find it was in the children's best interest to terminate your rights, the petitions would be dismissed, and then a number of different things could happen. But your unfitness finding would be vacated, and your parental rights would not be terminated. Does that make sense?

[S.S.]: Yes, ma'am.

THE COURT: The only issue in that second half is is it in the best interest of your children to have your rights terminated and be adopted, or should the petition be dismissed in pursuit of some other alternative.

¶18    In support of her argument that the circuit court improperly informed her of the potential dispositional outcomes, S.S. relies on *Therese S.*, 314 Wis. 2d 493, ¶16.    In *Therese S.*, we interpreted the requirement of WIS. STAT. § 48.422(7)(a) that the court must engage the parent in a personal colloquy to "determine that the admission is made voluntarily with understanding of ... the potential dispositions." *See id.*, ¶5. We concluded that "at the very least" circuit courts must inform the parent that at the dispositional phase of a TPR, the court will hear evidence related to the disposition and will either terminate the parent's rights or dismiss the petition, if the evidence does not warrant termination. *See id.*, ¶16.

¶19    Relying on *Therese S.*, S.S. asserts that the circuit court's colloquy must convey to the parent that there are *only* two legal outcomes at a dispositional hearing: termination of parental rights or dismissal of the TPR petitions. Acknowledging that the court did in fact inform S.S. that it could either terminate

her parental rights or dismiss the TPR petitions, S.S. argues that the court "went well beyond this binary" and instead presented her with a "panoply of other alternatives that could occur … which were legally and factually nonexistent."

¶20 Specifically, S.S. asserts that there is no legal or factual basis for informing her that her children could immediately be returned to her care without involvement from the Division of Milwaukee Child Protection Services, especially given that these TPR proceedings involved a "CHIPS matter." Because of the CHIPS orders, S.S. argues that the court would have had no authority to allow her to leave with her children following the TPR dispositional hearing, and therefore it was erroneous to inform S.S. while accepting her plea that she could obtain such a result.

¶21 S.S. next argues that the circuit court erred when it stated it could later determine whether to "reinvigorate" the existing CHIPS cases if it did not terminate S.S.'s parental rights. As best as we can discern, S.S. contends that if the TPR case had been dismissed, the decision would have had no legal effect on the CHIPS orders and the court could not have exercised its discretion to decide whether to reinvigorate a separate court matter.

¶22 Finally, S.S. asserts that the circuit court "misstate[d] the law" when it informed her that guardianship could be a dispositional alternative if the court dismissed the State's petitions and did not terminate her parental rights. S.S. argues that guardianship would be a potential dispositional alternative "only after the binary decision—to terminate, or not to terminate—has been made."

¶23 The State responds by refuting all of S.S.'s arguments and by disagreeing with her interpretation of *Therese S.* The State highlights the fact that the circuit court did inform S.S. that it could either grant the TPR or dismiss the

petitions. Regarding the court's ability to "reinvigorate" the CHIPS orders, the State explains that WIS. STAT. § 48.368(1) suspends the existing CHIPS orders pending the outcome of a TPR proceeding. The State notes that the expiration date for one child's dispositional order passed while the TPR proceedings were pending. As a result, the State submits that if the court had dismissed the TPR petition, the court would have then had the option to extend the CHIPS order,[10] thereby "reinvigorating" it, or it could have decided not to extend the CHIPS order, resulting in the court losing jurisdiction and the child in question being returned to S.S. As to guardianship, the State explains that the court could have transferred guardianship either prior to the entry of a termination order or after granting a termination order pursuant to WIS. STAT. § 48.977 (providing for the appointment of guardians for children placed under, among others, a CHIPS order) and WIS. STAT. § 48.427 (providing for the transfer of guardianship and custody pending adoptive placement to various entities upon the circuit order terminating the parental rights of one or both parents.).

¶24 We need not resolve the nuances of the parties' arguments because, as conceded by S.S. and as shown by the plea hearing transcript, as required by *Therese S.*, the circuit court informed S.S. that it would hear evidence at the TPR dispositional hearing and then would either terminate her parental rights or dismiss the State's TPR petitions.

---

[10] *See* WIS. STAT. § 48.368(1) ("If a petition for termination of parental rights is filed ... during the year in which a dispositional order under s. 48.355 [CHIPS orders]… is in effect, the dispositional … order … shall remain in effect until all proceedings related to the filing of the petition or an appeal are concluded.").

¶25    We reject S.S.'s argument that *Therese S.* stands for the proposition that as a matter of law, the circuit court, during a TPR plea colloquy, may inform a parent that there are only two dispositional outcomes—termination or dismissal of a TPR petition—and is prevented from further informing a parent of potential outcomes if it would decide to dismiss the TPR petitions.  What S.S. is really arguing is that the court's dispositional alternatives she is contesting were either not plausible under the circumstances, or could have only occurred had the court dismissed the petitions and additional, separate legal proceedings occurred.  Other than misinterpreting *Therese S.*, S.S. does not provide us with any persuasive authority to show us that the court, by presenting her with a "panoply of other alternatives," actually violated its mandatory duties.

¶26    In sum, S.S. has not persuaded us that the circuit court violated its mandatory duties by presenting its dispositional alternatives, and that she did not know or understand the information that should have been provided at the plea hearing.  Accordingly, we conclude that S.S. did not establish a prima facie case for plea withdrawal on this issue, and therefore, we continue to S.S.'s next alleged plea colloquy defect.

**III.  Circuit Court's Statements Regarding the Statutory Standard Applied at the Dispositional Hearing**

¶27    We now turn to S.S.'s argument that during the plea colloquy, the circuit court failed to explain the proper statutory standard that it is required to apply at the dispositional phase of TPR proceedings.  WISCONSIN STAT. § 48.426(2), provides that the "best interests of the child shall be the prevailing factor considered by the court in determining the disposition" in a termination of parental rights case.  S.S. argues that the court misinformed her that the State

13

would have the burden of proving that termination was in the best interests of the children, and as a result, S.S. "satisfactorily alleged that she did not know or understand this information," and was entitled to a hearing on her plea withdrawal motion.

¶28 We pause to note that in the discussion below, we focus our attention on the circuit court's colloquy with S.S. on October 21, 2021, when the court actually accepted S.S.'s no contest pleas. While we are cognizant of the court's incorrect prior references at other pretrial hearings to a burden of proof that the State carries at a dispositional hearing, those prior references neither alter nor affect our conclusion below. Accordingly, we now recount in detail the court's colloquy with S.S. at the October 21, 2021 plea hearing at which S.S., S.S.'s prior attorney, the GAL, the case manager, and the State were present.

¶29 At the outset of the plea colloquy, the circuit court ascertained S.S.'s age, level of education, and that S.S. could read and write English. S.S. acknowledged that she read the TPR petitions and "had a basic understanding" of what the State was alleging.

¶30 The following interaction occurred with S.S.:

> THE COURT: You have an absolute right to a trial, and to have a jury or a judge decide after that trial if the State has proven a reason to terminate your parental rights. Do you understand that?
>
> [S.S.]: Yes.
>
> THE COURT: And the State would have to do that by clear, convincing, and satisfactory evidence to a reasonable certainty. That's what we call the middle burden. Do you understand that?
>
> [S.S.]: Yes.

14

THE COURT: By pleading no contest in the grounds phase, you're giving up your right to fight against the termination of parental rights in the grounds phase, and you're acknowledging that the State can prove the grounds by clear, convincing, and satisfactory evidence. Do you understand that? Do you understand that, [S.S.]?

[S.S.]: Somewhat, but somewhat not. Because, um, so it would be me against the State, right?

THE COURT: Yes.

[S.S.]: There would be a lot of people called, and I would be going on the stand and all that, right?

¶31 In an attempt to address S.S.'s question, the circuit court began informing S.S. of her "trial rights." S.S. acknowledged her understanding that she had a right to jury at the grounds phase. Upon reviewing additional rights with S.S., she acknowledged that they made sense to her. At that point, the court informed S.S. of the following:

THE COURT: Now, that does not mean that you're giving up your right to have a trial or to contest whether it's in the children's best interest that the [c]ourt actually terminate your parental rights. Do you understand that?

[S.S.]: Yes.

THE COURT: And I'm going to talk about that second half of the process in just a second. But I want to make sure you understand that this no contest plea only applies to the first half. The grounds phase of the case. Does that make sense?

[S.S]: Yes.

The circuit court turned its attention to the dispositional phase of the TPR proceedings in this case, explaining:

THE COURT: Now, in the second half, at the disposition phase, if the [c]ourt did not grant the termination ultimately, meaning it did not find it was in the children's best interest[s] to do so, then the petitions would

15

be dismissed, and that unfitness finding would be reversed. Okay?

[S.S.]: Yes.

THE COURT: Okay. So let's talk now about how the trial works in the second half where you can contest if you want, but it's in the children's best interest[s] that the [c]ourt terminate your parental rights. It's basically another right to a trial except there's no right to a jury in that second half. It's always just a trial to the [j]udge. Okay?

[S.S.]: Okay.

THE COURT: But all those same trial rights would pertain. So it would be the State's burden to prove it's in the children's best interest[s] that I terminate your rights. Although it's just to a reasonable certainty. Not clear and convincing evidence. Do you understand that?

[S.S.]: Yes.

THE COURT: So that's a little bit lower burden. But all those same trial rights would still apply. So witnesses on the stand. The right of cross examination. The right to introduce your own evidence. The right to compel witnesses to come to court and testify for you. The right to testify yourself or remain silent. But again, knowing silence can be used against you. Do you understand that you still will have all of those rights?

[S.S.]: Yes.

After informing S.S. of the potential dispositional outcomes, the circuit court reviewed its comments above, stating:

THE COURT: So again just to review in that second half, if the [c]ourt did not find it was in the children's best interest[s] to terminate your rights, the petitions would be dismissed, and then a number of different things could happen. But your unfitness finding would be vacated, and your parental rights would not be terminated. Does that make sense?

[S.S.]: Yes, ma'am.

THE COURT: The only issue in that second half is [if] it [is] in the best interest[s] of your children to have

16

> your rights terminated and be adopted, or should the petition be dismissed in pursuit of some other alternative.
>
> So let me circle back around. Does that answer the question that you were kind of mulling over before?
>
> [S.S.]: Yes, ma'am. Yes, ma'am, it is.

S.S. testified that no one promised her or paid her anything in exchange for entering a no contest plea as to grounds, and that she was not being coerced or threatened. S.S. also testified that she spoke with her therapist about her decision to enter no contest pleas. When asked by the court whether she was still comfortable with entering her pleas, and whether she was making her decision to plead no contest in a knowing, intelligent, and voluntary way, S.S. replied: "Yes, ma'am." Trial counsel also testified that S.S. was making knowing, intelligent, and voluntary no contest pleas. Following the colloquy, the circuit court accepted S.S.'s no contest pleas.

¶32 As to the dispositional hearing, this court has previously stated that "the parent must be informed of the statutory standard the court will apply at the second stage. That is, the court must inform the parent that '[t]he best interests of the child shall be the prevailing factor considered *by the court* in determining the disposition....'" ***Therese S.***, 2008 WI App 159, ¶16 (citation omitted; alterations in ***Therese S.***; emphasis added). Nowhere in ***Therese S.*** did we conclude, however, that the State carries a burden of "reasonable certainty" to prove whether termination was in a child's best interests. The plain language of the case states that the best interests of the child are "considered by the court[.]" *See **id.***

¶33 TPR decisions from this court have arrived at differing conclusions as to the impact of misstatements of the standard of law or the burden of proof. For example, in ***T.A.D.S.***, No. 2018AP2173, the circuit court similarly assigned a

burden to the State at the dispositional hearing. *Id.*, ¶4. In concluding that T.A.D.S. did not make a prime facie case on his plea withdrawal claim, this court reasoned that the misstatement was irrelevant in the context of the entire record because the importance of the best interests standard was explained to the parent. *Id.*, ¶13.

¶34 In contrast, in *State v. A.G.*, No. 2021AP1476, unpublished slip op. (WI App Feb. 15, 2022), the circuit court misstated the burden and this court remanded for an evidentiary hearing on the parent's prima facie case for plea withdrawal. There, we differentiated the facts and explained that "unlike in *T.A.D.S.*, the [circuit] court did not advise *A.G.* that the 'driving factor' or 'the most important factor' at the dispositional phase would be the child's best interest." *Id.*, ¶20.[11]

¶35 Given the recent court decisions cited above, we assume without deciding that S.S. established a prima facie case for plea withdrawal on this alleged defect. However, we further conclude that the State has shown, by clear and convincing evidence, that S.S. knowingly and intelligently waived the right to contest the allegations in the petition, as we now explain.

¶36 The crux of S.S.'s argument is that she took the circuit court "at face value" when it told her that the State would be the party with the burden of proving the best interests of a child standard to the court. S.S. appears to argue that the court's statements referencing her ability to have a trial at the dispositional

---

[11] We note that after additional proceedings, *State v. A.G.*, No. 2022AP652, unpublished slip op. (WI App July 12, 2022), has been appealed to the Wisconsin Supreme Court and is pending.

hearing prevented her from knowing and understanding the actual statutory standard of best interests and its application at the TPR dispositional hearing.

¶37    We are not persuaded. While being examined by the State during the postdispositional hearing, S.S. testified that, even before talking with her attorney, she knew that "the judge" would ultimately decide what was best for her children.[12] S.S.'s own testimony further reveals the following:

> [ADA:] When the [c]ourt asked you do … you believe that you're making this decision to plead no contest in a knowing, intelligent and voluntary way and you said, yes, Ma'am, that would have been honest to the [c]ourt, correct?
>
> [S.S.:] Yeah.
>
> …
>
> [ADA:] When I asked if you knew that the [c]ourt would be making a decision about what is in the best interest of your children, you said you already knew that?
>
> [S.S.:] Yes, I heard her say that. Yeah, I remember her saying that.

Although S.S. later testified that she would have gone to trial had she *not* been misinformed that the State carried a burden of proof, when asked about her understanding of the term "burden," S.S. replied: "[i]t's something that you got to deal with on your record, hard to deal with, a burden, a worry."

¶38    Based on the testimony above, we conclude that the State has shown, by clear and convincing evidence that S.S. knowingly and intelligently waived the right to contest the allegations in the petition because she clearly understood that

---

[12] S.S., in her opening brief, concedes that she understood "the judge would be the ultimate decisionmaker as to whether the best interest standard justified termination."

the best interests of the child standard governed whether the court would terminate her parental rights. We further conclude that, given S.S.'s understanding of the term "burden," the court's misstatements regarding burden of proof did not negate, in any meaningful way, S.S.'s understanding that the court would ultimately decide whether to terminate her parental rights. *See* WIS. STAT. § 48.426(2).

¶39 In sum, we conclude that the State has met its burden in showing that S.S. knowingly and intelligently waived the right to contest the allegations, despite any misstatements made by the circuit court about the standard of law or the burden of proof at the dispositional phase of a TPR.[13] Accordingly, we affirm the orders terminating S.S.'s parental rights to her children, and the orders denying her postdisposition motion.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[13] To the extent we have not addressed an argument raised by S.S., the argument is deemed rejected because it is either undeveloped or unsupported by the record. *See **State v. Waste Mgmt. of Wis., Inc.**,* 81 Wis. 2d 555, 564, 261 N.W.2d 147 (1978) ("An appellate court is not a performing bear, required to dance to each and every tune played on an appeal.").