STATE, Respondent, v. HERFEL, Appellant.

*No. State 38.   Argued December 2, 1970.—Decided January 5, 1971.*
(Also reported in 182 N. W. 2d 232.)

514

For the appellant there were briefs by *Ross, Stevens, Pick & Ross,* attorneys, and *Jack F. Olson* of counsel, all of Madison, and oral argument by *Mr. Olson.*

For the respondent the cause was argued by *Mary V. Bowman,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HALLOWS, C. J.   Herfel raises four issues on appeal: (1) Whether there was sufficient credible evidence to sustain the jury's verdict of guilty; (2) whether it was error for a successor judge to hear and determine his motion for a new trial; (3) whether he should have been granted a new trial on the basis of newly discovered evidence; and (4) whether he should be granted a new trial in the interest of justice.

### Sufficiency of the evidence.

The facts are in sharp dispute and the determination of guilt depended upon whether the jury believed the complaining witness, a young married woman. We think the jury could find beyond a reasonable doubt that Herfel was guilty of rape and a detail of the facts will not be necessary.

The complaining witness needed her car repaired and on September 26, 1969, she visited Nordness Used Car Lot in Madison. She had spent the two previous days unsuccessfully in an attempt to either find a part or to have the car fixed at the lot. On this day Herfel told her he knew where she could get a part if she came with him. After several stops, including a tavern and a garage, Herfel took her to his home. She claimed Herfel wanted to make a call to locate the auto part; Herfel denied it.

According to the complaining witness after they entered the house, Herfel announced they were going to bed and threatened her with a gun, placing it to her head. He led her to a bedroom, partly unclothed her and had intercourse. She testified she was so scared she could not move or resist and thought the calmer she stayed the better off she would be. She was afraid Herfel would shoot her. She also testified that after the act Herfel threatened that he would kill her if she told the police.

According to Herfel, the complaining witness came willingly into the house and consented to the intercourse. He admits having a gun and placing it on the dresser in the bedroom.

After the incident the complaining witness returned to the Nordness lot with Herfel who stopped along the way for gas. After leaving the lot and before reporting the incident, she went to a savings and loan association and deposited a large sum of money, which she had with her; inquired about a private detective agency, and finally reported the incident to the police, who took her to a hospital where she was examined by a Dr. Keepman. After the trial, Dr. Keepman went to Herfel's trial counsel and told him of his examination of the complaining witness. The doctor's affidavit furnished the basis for the motion for a new trial on the ground of newly discovered evidence.

Rape is defined in sec. 944.01 (1), Stats., as intercourse with a woman other than one's wife "by force and against her will," which term is defined in sec. 944.01 (2) as "either that her utmost resistance is overcome or prevented by physical violence or that her will to resist is overcome by threats of imminent physical violence likely to cause great bodily harm." Since Herfel admits having intercourse and the complaining witness' resistance was neither her utmost nor prevented by physical violence, and because the threat of using a gun constitutes a threat of imminent physical violence, the precise question is

whether her will to resist was overcome by the threat of Herfel to use the gun to carry out his intention.

We are cautioned by Herfel that policy considerations should make the proof of rape difficult to prevent "after thought" rapes, *i.e.*, the possibility of women experiencing an unpleasant sex experience being motivated to "get even" and making a claim of being raped. Because of the difficulty of proving a defense, it is argued the "utmost resistance" doctrine in *Brown v. State* (1906), 127 Wis. 193, 106 N. W. 536, should be strictly observed. But we pointed out in *State v. Schmear* (1965), 28 Wis. 2d 126, 130, 135 N. W. 2d 842, that the rigidity and strictness of *Brown* had been eroded and the term "utmost resistance" was a relative term and that the law did not require the useless to be done. We also pointed out the standard of *Brown* had been modified and softened in *McLain v. State* (1914), 159 Wis. 204, 149 N. W. 771.

The doctrine requiring utmost resistance applies only to a woman's counteraction to the physical force asserted by the man to commit the act of intercourse and is not applicable to the facts before us. There is no statutory test to determine the status of the complaining witness' will. Common sense and the experience of mankind must be used to determine when a person's will is overcome by threats of imminent physical violence which if carried out would cause great bodily harm. Herfel confuses the necessity to prove nonconsent by fighting to the utmost the physical force to commit the act of intercourse with the test to determine how much physical resistance, if any, is required in the face of threats of physical violence and personal harm to prove the will was overcome.

Herfel argues the complaining witness did not exhibit sufficient fear to prove her will was overcome and she did not test the sincerity of Herfel's threat by any significant resistance. Herfel only measures the degree of

fear which overcomes the will not to consent by the cases in which the victim was physically abused or was rendered hysterical, incoherent, or otherwise deranged by the threatening violation of her person, and suggests that any woman rational enough to consciously elect not to resist unwanted intercourse is not frightened enough to meet Wisconsin's standard.

Reliance is placed on *State v. Hoffman* (1938), 228 Wis. 235, 280 N. W. 357, for the proposition the threat must be such as to induce in the mind of a woman "an overmastering fear,"—a fear so great as to terrify her and render her practically incapable of resistance. In *Hoffman*, at page 240, the court summarized the law as it stood at that time as follows:

"It therefore clearly appears that 'the fear' which renders the utmost resistance unnecessary is a 'fear of death or great bodily harm,' a 'fear of great personal injury,' or 'serious personal injury,' a fear that 'so overpowers her that she dares not resist,' a 'fear and terror so extreme as to preclude resistance,' a fear which renders her mind 'well nigh incapable of continuing her resistance to repel him.' The fear therefore must not only be real but so great as to terrify her and render her practically incapable of resistance."

The test of whether a woman's will to resist is overcome by threats of imminent physical violence likely to cause great bodily harm is subjective and it need not be expressed in terms of fear and incapability to resist in every case. Some women may respond to the threat of gunpoint without great fear or being rendered incapable of resisting. Resistance may be completely and imminently dangerous. In such a situation, fear or terror not to resist as an expression of nonconsent may be supplanted by a strong motivation or belief which induces the choice to submit. The choice under such conditions, while philosophically a choice, is legally unfair and is legally no choice; it does not constitute legal consent. Resistance, or the lack of resistance, as such is not the

central issue in rape. It is only some evidence of whether the woman's will to resist is overcome under the circumstances and this question depends upon other factors. The threat of death or serious personal injury by use of a gun may be reason enough not to resist and to overcome the will within the meaning of this section in defining the crime of rape. The law does not require a woman to become a martyr to test by resistance the sincerity of a threat to rape at gunpoint. We believe the law has advanced to this view since *Hoffman* was decided.

This view of "yielding through fear" as not being voluntary consent finds support in legal literature. *See* 75 C. J. S., *Rape*, p. 481, sec. 15. It should be noted, however, that if the threat of death or serious bodily harm by use of a dangerous weapon is successful in inducing submission, it must be the predominating reason for submission. *See: People v. Sanders* (1967), 82 Ill. App. 2d 159, 227 N. E. 2d 79; *People v. Hinton* (1959), 166 Cal. App. 2d 743, 333 Pac. 2d 822. The idea was well phrased years ago in *Whittaker v. State* (1880), 50 Wis. 518, 524, 7 N. W. 431, when it quoted from *Regina v. Day,* 9 Carr. & P. 722, "There is a difference between consent and submission. Every consent involves a submission, but it by no means follows that submission involves consent."

It is argued that the complaining witness had no reason to fear Herfel. He was calm and collected. A man does not have to be irrationally and emotionally disturbed to be a rapist; a deliberate man can rape. Rape is not reserved for maniacs.

It is argued the conduct of the complaining witness after the incident indicated she was not raped. The law does not require any type of conduct after the completion of the act to evince nonconsent. The complaining witness reported the incident to the police although Herfel threatened he would kill her if she did. Going to the savings and loan office first and then inquiring about a detective

agency does not prove she consented to the act. Nor does the fact she rode back to the car lot and did not try to escape when they stopped for gas prove the probability of consent. At that time the deed had been done and she knew the culprit. It may be true that some women would react differently than the complaining witness did because of their emotional and nervous makeup, but the fact she did not become hysterical is not in itself proof of consent.

### *Successor judge.*

Herfel is not entitled to a new trial because the judge who decided the motion for a new trial did not hear the testimony at the trial. This is not a case of switching judges in midtrial or attempting to make findings of fact on evidence the judge did not hear. True, sec. 256.08, Stats., is not applicable because there was no "vacancy" caused by illness of Judge MALONEY. However, disability to act in respect to a motion for a new trial in a criminal case is dealt with in sec. 974.02 (2), Stats. 1969 (sec. 958.06 (1), Stats. 1967), which provides, "If the trial judge is disabled or no longer in office, his successor or another judge may hear and determine the motion [for a new trial]." This statute, which governs this case, expresses the majority rule. In an Annot., *Criminal Case —Substitution of Judge,* 83 A. L. R. 2d 1032, it is stated the decided majority of criminal cases holds a judge who is substituted after the verdict of a jury is returned may hear and determine a motion for a new trial. The language in *Ohms v. State* (1880), 49 Wis. 415, 5 N. W. 827, decided prior to the adoption by ch. 631, sec. 145, Laws of 1949, of the successor-judge rule in sec. 974.02 (2), Stats., is not to the contrary because neither judge was disabled.

We can agree with the argument the successor trial judge cannot make findings of fact on evidence he did not hear and switching judges during trial and prior to

the verdict would be a violation of the accused's right to due process of law. Here, Judge SACHTJEN was substituted after the verdict of the jury was received and accepted by Judge MALONEY and after Herfel had been committed for a presentence examination. Under these conditions, there is nothing fundamentally unfair on passing upon the motion for a new trial because of newly discovered evidence. A judge does not need to hear the evidence at the trial if he can review it in determining whether the newly discovered evidence entitles one to a new trial.

*Newly discovered evidence.*

Usually on appeal to review the denial of a motion for a new trial on the ground of newly discovered evidence, the test applied is whether the trial court abused its judicial discretion. *Hedger v. State* (1911), 144 Wis. 279, 128 N. W. 80; *Eaton v. State* (1948), 252 Wis. 420, 31 N. W. 2d 618. However, as in this case, when a judge who decided such a motion did not hear the evidence at trial this court on appeal starts from scratch and examines the record de novo so that it can consider the facts directly on which the legal issue raised by motion depends. This procedure is analogous to that on appeal when the sufficiency of the evidence is in question and the trial court has not rendered an opinion or has not discussed the evidence sufficiently in his opinion to be of help on review.

The affidavit of Dr. Keepman discloses he could testify: (1) What the complaining witness told him about the events at the Herfel house; (2) his impression of her emotional and mental state at the time of his examination; and (3) her physical condition disclosed by the examination. The standard requirements for granting a new trial on the basis of newly discovered evidence are well established; they are: (1) The evidence must have come to the moving party's knowledge after a trial;

(2) the moving party must not have been negligent in seeking to discover it; (3) the evidence must be material to the issue; (4) the testimony must not be merely cumulative to the testimony which was introduced at trial; and (5) it must be reasonably probable that a different result would be reached on a new trial. *Estate of Eannelli* (1955), 269 Wis. 192, 68 N. W. 2d 791; *see Lock v. State* (1966), 31 Wis. 2d 110, 118, 142 N. W. 2d 183. The new evidence concerning the complaining witness' emotional and mental state is cumulative. At the trial there was evidence of her mental and emotional state after the act—while she went back to the used-car lot, went to a savings and loan office, and reported the incident to the police. Since this conduct is not persuasive or very material on the issue of whether her will was overcome at the time of the act, this new evidence would hardly change the result.

The testimony of events inside the Herfel house and her physical condition after the incident would be impeaching evidence of her credibility. Ordinarily, such evidence is not a sufficient ground to grant a new trial. *Walter Brothers Brewing Co. v. Kluck* (1914), 157 Wis. 388, 147 N. W. 359; *Lock v. State, supra; Birdsall v. Fraenzel* (1913), 154 Wis. 48, 142 N. W. 274. In *Birdsall* the court did say by way of dicta that impeachment evidence might be so strong as to require a new trial because the verdict was based upon perjured evidence. However, the evidence offered on the motion is hardly so strong as to prove the verdict was based on perjured evidence because the complaining witness' testimony could not now be believed. Nor can it be said the impeachment evidence would probably cause a different result on a new trial. While this might be a close case on credibility with the new evidence before the jury, still considering the use of the gun as a means of force we cannot say it was reasonably probable as distinguished from possible that a different verdict would be the result.

Since this court considers the newly discovered evidence as not being sufficient to change the result, we can hardly say as a matter of law that Herfel should not have been found guilty. Consequently, the interest of justice does not demand Herfel be given a new trial. *See Lock v. State, supra.*

*By the Court.*—Judgment and order affirmed.