BROWN, Plaintiff in error, v. STATE, Defendant in error.

*No. State 11.   Argued May 1, 1973.—Decided June 5, 1973.*
(Also reported in 207 N. W. 2d 602.)

For the plaintiff in error there was a brief by *James R. Glover* and *Hauser, Glover & Casey, S. C.,* all of Madison, and oral argument by *James R. Glover.*

For the defendant in error the cause was argued by *Charles D. Hoornstra,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

WILKIE, J. Three issues are raised in this review:

1. Was the evidence adduced at trial sufficient to support the conviction for rape?

2. Did the trial court err in refusing to give an instruction requested by defendant which required, for there to be rape, fear of imminent physical violence which rendered the rape victim incapable of resisting?

3. Did the trial court err in failing to instruct the jury that intent to have intercourse by force and against the victim's will is an essential element of the crime of rape?

## I. *Sufficiency of the evidence.*

As is almost always the case in a trial of a rape case, there are two sharply differing claims as to what happened—the victim's and the defendant's. The defendant urges that certain portions of the testimony given during trial are inherently incredible, and that the evidence was not sufficient to enable a jury to conclude, beyond a reasonable doubt, that prosecutrix's will to resist was overcome by fear of imminent physical violence.

The complainant in the instant case testified that on the evening immediately preceding the attack, which occurred between 12:50 a. m. and 2 a. m. on May 8, 1971, she had visited a tavern, Snoopy's, in the city of Madison, with one of her roommates, Christine ———; after the tavern closed, she could not find the roommate and began walking south on Park Street to her apartment, some two miles; upon reaching Madison General Hospital she first encountered the defendant who was walking in the opposite direction on Park Street; the defendant reversed his direction and began walking with the prosecutrix. She further testified that when he asked her if she wanted a ride, she responded in the negative; when they arrived at the corner the defendant "put something in my back and told me to get in the car, not to scream." The prosecutrix stated she could see the object which defendant held to her back was a gun, after initially believing it was a knife. This object was,

in fact, a squirt gun which was designed to look like a 9 mm Luger. This squirt gun has a white trigger and a red button or stopper.

Defendant's automobile was parked across the street from the emergency room of Madison General Hospital. Approaching the auto, the complainant testified, she could see no other persons in the area. During this time, the gun was in defendant's belt, concealed by his jacket. They entered the defendant's car and they began driving south on Park Street. The prosecutrix testified that as they were driving "he told me that he wanted to make love to me." She responded "No, and . . . asked him to let me out of the car."

The defendant turned onto Fish Hatchery Road and ordered the complainant, who had been crying, to be quiet. They continued to drive along Fish Hatchery to Highway PD, stopping only once for a red light on Wingra Road. The complainant testified she did not attempt to jump out of the car because defendant had his hand on the gun which was on his left side and inside his belt. The defendant turned onto Highway PD and, after a moment, turned onto a gravel road and stopped the automobile. The complainant stated the area was dark and secluded.

According to the complainant, the two talked for a few moments, during which conversation the defendant produced a Ray-O-Vac credit union identification card which stated his name and address. He also stated that "he had a lot of sexual tension and he wanted to relieve it." At this point the complainant asked the defendant to put the gun away because she was afraid of it. He consented and placed the weapon beneath the automobile hood. The prosecutrix had also alighted from the car to observe defendant put the gun away. Upon being ordered to climb back into the car, she entered the front seat. Defendant ordered her into the back seat and she complied. The defendant entered the rear seat

with the complainant and ordered her to remove her clothes. She complied with this order. The defendant also removed his clothes and consummated an act of sexual intercourse. At no time during this act did the complainant offer any fight or struggle because "I felt very weak and I don't think I could have fought hard enough to get away and if I had he still could have gotten to the gun."

The prosecutrix also testified that after intercourse the two redressed, returned to the front seat and another conversation ensued. The defendant stated he felt badly and wanted to make it up to her by taking her to dinner. Complainant testified she agreed in order to convince him she would not call the police. She wrote her first name and telephone number on a piece of paper, changing only the last digit of the number. She stated that she changed only the last digit so as to be able to remember the number should he subsequently ask. The prosecutrix lit a cigarette during this conversation and gave defendant one. The defendant let her out of the car on Fish Hatchery Road near the beltline. She testified she immediately ran to her apartment. As she ran, she heard a crash and upon looking back saw the defendant had struck a car pulling away from the curb.

Complainant's roommate, Jane ———, testified she heard the complainant come into the apartment at approximately 2:15 a. m. on the morning of May 8, 1971, "screaming and crying for Chris." Jane elaborated: "Well, like she was in hysterics. She kept screaming for Chris to come there." Miss Christine ——— testified the complainant "burst through the door . . . She was crying and really upset. She was in hysterics."

Dane County Sheriff's Officer Lawrence Larson testified he interviewed the complainant and subsequently went to defendant's apartment on West Gilman Street. After being admitted to the apartment the officer advised defendant he was under arrest. The officers seized

a Ray-O-Vac identification card and an address book. Officer Larson also stated he obtained a search warrant and with four other officers searched the hood area of defendant's car. The purported weapon was still there, stuck under a battery cable. Officer Larson also testified that in the morning sunlight from a distance of four feet he saw "what appeared to be a Luger." Several pictures were taken and the officer stated he then observed it to be only a squirt gun as he was about to remove the gun. Officer Larson stated he had handled "two or three" such weapons (Lugers) in his eight years on the force.

The defendant's version of the incident is significantly different. He testified he had been at a party during which he and some friends had been playing with the squirt gun. He left and was driving south on Park Street to purchase some cigarettes at a Clark gas station. He stated he observed the complainant hitchhiking and stopped his auto to give her a ride; he gave her his name and received hers. He stated that he turned onto Fish Hatchery Road without being asked to but that they had been talking and she never mentioned going home; he stopped the car and the complainant slid across the seat and put her arm around him. At this time, he testified, she first felt the purported gun which, at that time, was still partially filled with water. According to defendant, she stated "Well, you don't need that." He stated he did not tell her it was a squirt gun and placed it under the hood upon request. He stated he thought it was obvious that the gun was a squirt gun and only removed it from the auto to please her. Defendant testified the two engaged in an act of sexual intercourse during which she experienced an orgasm prior to his. According to defendant the complainant thereupon stated to him "Well, you wasn't bad yourself." Defendant completely denied the complainant's version of the incident.

The defendant was twenty-nine years old and approximately 5′ 6″ tall. The complainant was twenty years of age and approximately the same height as defendant. At trial she stated she had previously experienced sexual intercourse. She testified further that all she really saw of the gun was the barrel and that she never saw the end of the toy where the red plug was located. She stated that at no time did she hear the sound of rattling in the squirt gun, such sound being audible during the trial in the courtroom when counsel shook the gun there.

This court has long and often reiterated the rules to be applied in appellate review of the sufficiency of evidence in criminal cases. These rules were synthesized in *Bautista v. State:*

"Several rules applied in appellate review of the sufficiency of the evidence in criminal cases have been stated so frequently in our late cases that they need no citation of authority to support them. The burden of proof is upon the state to prove every essential element of the crime charged beyond reasonable doubt. The test is not whether this court or any of the members thereof are convinced beyond reasonable doubt, but whether this court can conclude the trier of facts could, acting reasonably, be so convinced by evidence it had a right to believe and accept as true. A criminal conviction can stand based in whole or in part upon circumstantial evidence. The credibility of the witnesses and the weight of the evidence is for the trier of fact. In reviewing the evidence to challenge a finding of fact, we view the evidence in the light most favorable to the finding. Reasonable inferences drawn from the evidence can support a finding of fact and, if more than one reasonable inference can be drawn from the evidence, the inference which supports the finding is the one that must be adopted. Our review of the record in response to a challenge to the sufficiency of the evidence is so limited by these rules." [1]

---

[1] (1971), 53 Wis. 2d 218, 223, 191 N. W. 2d 725.

Very recently in *State ex rel. Kanieski v. Gagnon* it was stated by this court, citing *Bautista:*

"While the state must prove defendant's guilt beyond a reasonable doubt, on appeal this court's review is limited to determining whether the evidence adduced, believed and rationally considered by a jury was sufficient to prove defendant's guilt beyond a reasonable doubt. Reversal is required only when the evidence considered most favorably to the state and the conviction is so insufficient in probative value and force that it can be said as a matter of law that no trier of facts acting reasonably could be convinced to that degree of certitude which the law defines as beyond a reasonable doubt." [2]

The credibility of witnesses is peculiarly within the province of the trier of fact and is not to be substituted for unless the evidence relied upon is "inherently or patently incredible." [3] In light of these rules the specific evidentiary inadequacies alleged on appeal by defendant must be examined.

First, the defendant finds incredible the complainant's testimony concerning the water pistol. Defendant acknowledges complainant's consistent testimony, on both direct and cross-examinations, that she only clearly saw the gun barrel. Yet, according to defendant, during the entirety of the incident the *least* visible portion of the squirt gun was the barrel and the *most* visible portion thereof was the rear end, containing the red stopper.

In addition to the fact that the testimony of prosecutrix is not so "inherently or patently incredible" as to warrant the substitution of this court's judgment for that of the jury, it is incomprehensible for the defendant to argue here that the prosecutrix would have him remove a water pistol from the passenger compartment

---

[2] (1972), 54 Wis. 2d 108, 113, 194 N. W. 2d 808.

[3] *Gauthier v. State* (1965), 28 Wis. 2d 412, 416, 137 N. W. 2d 101, certiorari denied, 383 U. S. 916, 86 Sup. Ct. 910, 15 L. Ed. 2d 671.

of his auto to the engine compartment. This holds equally true with respect to defendant's contention that the half-filled water pistol gave off a clearly audible rattle.

Second, the defendant contends Officer Larson's testimony was incredible with regard to his thinking the water gun was a real weapon in broad daylight from a distance of four feet. Defendant contends even a cursory glance at the three pictures taken by police reveals the white trigger of the toy. The state argues there is nothing in the record to show that regular firearms are never painted different colors. Additionally, this testimony is certainly not inherently defective. Logic, not calm, daytime visual perception must herein govern, however, and, as above, it lacks the element of common sense to suggest the complainant feared a squirt gun sufficiently to interrupt her alleged passion for defendant so as to require him to remove it from the auto.

Third, defendant contends the evidence adduced at trial was insufficient to support the necessary conclusion that complainant's will to resist was overcome by fear of imminent physical violence. Because of the failure of complainant to offer any physical resistance, according to defendant, the jury could not, as a matter of law, conclude beyond a reasonable doubt that the prosecutrix's will to resist was overcome by fear of imminent physical violence. This lack of resistance, together with complainant's acknowledged prior "unchaste character" and lack of hysteria during or immediately following the incident, argues defendant, does not permit the conclusion that complainant's will was forcefully overcome.

The term "utmost resistance" found in sec. 944.01 (2), Stats., has been denominated a relative rather than absolute term by this court.[4]

---

[4] *State v. Muhammad* (1968), 41 Wis. 2d 12, 18, 162 N. W. 2d 567.

This court has held that resistance is unnecessary where useless. Thus, for example, in *State v. Schmear,* it was stated:

"While the law requires the utmost resistance as evidence of the woman's will, the law does not require the useless or the impossible." [5]

In the present case, resistance by the prosecutrix who was threatened with a very real-looking water pistol would have been a useless gesture only inviting serious injury or death. This, the law does not require.

The lack of resistance during the attack upon prosecutrix does not necessarily mean she was not in mortal terror or that she was consenting to defendant's advances. The testimony of her roommates to complainant's hysterical condition upon arriving home is certainly not so inherently incredible to warrant this court's intervention. In sum, the instant complainant was chiefly concerned with staying alive, or otherwise avoiding injury, and, in view of defendant's implied threats to her and the presence of the apparent means to act, her acquiescence cannot be construed as consent. We, therefore, conclude that the evidence adduced during the instant trial is not so insufficient in probative value that as a matter of law the trier of fact could not be convinced beyond a reasonable doubt of defendant's guilt.

II. *The trial court's refusal to give requested instruction on utmost resistance required.*

Defendant contends that the trial court erred in refusing to give the following requested instruction defining fear:

[5] (1965), 28 Wis. 2d 126, 130, 135 N. W. 2d 842. *See also: State v. Waters* (1965), 28 Wis. 2d 148, 155, 135 N. W. 2d 768.

"The fear of imminent physical violence which renders the utmost resistance unnecessary is a fear of death or great bodily harm which so overpowers her that she dares not resist, a fear which renders her mind incapable of continuing her resistance to repel him. The fear therefore must not only be real but so great and imminent as to terrify her and render her practically incapable of resistance."

The trial court instead gave, word for word, the standard rape jury instruction No. 1500, found in the Wisconsin Jury Instructions, Criminal. Defendant argues his requested supplementary instruction was proper in that the language was used by this court in *State v. Hoffman*[6] and was not specifically discredited in *State v. Herfel*,[7] the only case, according to defendant, decided by this court which might be construed as questioning the earlier assertion. According to defendant, the trial court's refusal to give his requested instruction was highly prejudicial to him in that this case, involving no physical violence and no resistance, squarely raises the question of whether the complainant's fear was great enough to meet the *Hoffman* test.

Defendant's contention, despite his protestations to the contrary, is squarely met by this court's decision in *State v. Herfel*, wherein the defendant contended the complaining witness had not exhibited sufficient fear to establish that her will was overcome. After quoting that portion of *Hoffman* which the instant defendant contends ought to have been permitted as a supplemental jury instruction,[8] this court in *Herfel* stated:

*"The test of whether a woman's will to resist is overcome by threats of imminent physical violence likely to cause great bodily harm is subjective and it need not be*

[6] (1938), 228 Wis. 235, 280 N. W. 357.
[7] (1971), 49 Wis. 2d 513, 182 N. W. 2d 232.
[8] *Supra,* footnote 6, at page 240.

*expressed in terms of fear and incapability to resist in every case.* Some women may respond to the threat of gunpoint without great fear or being rendered incapable of resisting. Resistance may be completely and imminently dangerous. In such a situation, fear or terror not to resist as an expression of nonconsent may be supplanted by a strong motivation or belief which induces the choice to submit. *The choice under such conditions, while philosophically a choice, is legally unfair and is legally no choice; it does not constitute legal consent.* Resistance, or the lack of resistance, as such is not the central issue in rape. It is only some evidence of whether the woman's will to resist is overcome under the circumstances and this question depends upon other factors. *The threat of death or serious personal injury by use of a gun may be reason enough not to resist and to overcome the will within the meaning of this section in defining the crime of rape.* The law does not require a woman to become a martyr to test by resistance the sincerity of a threat to rape at gunpoint. *We believe the law has advanced to this view since Hoffman was decided."* (Emphasis added.) [9]

The *Hoffman* definition of fear which renders the utmost resistance unnecessary has been modified in *State v. Herfel* which holds that consent or submission need not necessarily be prompted by "fear and terror so extreme as to preclude resistance," [10] but may, in the exercise of "[c]ommon sense and the experience of mankind," [11] be prompted by the "strong motivation or belief" that survival demands submission. We conclude that the proposed jury instruction was inaccurate and was properly rejected by the trial court. [12]

[9] *Supra,* footnote 7, at pages 518, 519.

[10] *State v. Hoffman, supra,* footnote 6, at page 240.

[11] *State v. Herfel, supra,* foonote 7, at page 517.

[12] *Zenou v. State* (1958), 4 Wis. 2d 655, 672, 91 N. W. 2d 208: "A trial court may properly refuse to give an instruction where a portion of it is improper."

III. *The trial court's failure sua sponte to instruct on needed intent.*

Acknowledging the statutory definition of the crime of rape does not contain, on its face the element of intent, the defendant nevertheless contends such element is necessary. It is this element, the intent to have intercourse by force and against her will, according to defendant, which distinguishes this crime from the less serious crime of fornication. Defendant apparently feels this instruction was so important that the trial court, despite the lack of a requested instruction, ought to have sua sponte so instructed the jury. Defendant argues such an instruction is not usually necessary in rape cases because the testimony reveals resistance or an unequivocal threat with a dangerous weapon close to the time of intercourse indicating such intent on the part of the defendant. Here, however, where no physical resistance occurred and no immediate unequivocal threats were made, defendant argues such instruction becomes critically important and the absence of such an instruction was highly prejudicial to the defendant who only intended sexual intercourse or fornication and not rape.

The defendant is precluded from raising this argument as a matter of right before this court. On innumerable occasions this court has held that errors which are not raised during trial are waived.[13] This is especially true with respect to alleged error in jury instructions.[14]

[13] *See, e.g., Curl v. State* (1968), 40 Wis. 2d 474, 480, 162 N. W. 2d 77; *State v. Halverson* (1966), 32 Wis. 2d 503, 510, 145 N. W. 2d 739; *Kimmons v. State* (1971), 51 Wis. 2d 266, 268, 186 N. W. 2d 308.

[14] *State v. Kanzelberger* (1965), 28 Wis. 2d 652, 659, 137 N. W. 2d 419, certiorari denied, 385 U. S. 867, 87 Sup. Ct. 127, 17 L. Ed. 2d 93; *see also: Mitchell v. State* (1970), 47 Wis. 2d 695, 700, 177 N. W. 2d 833.

This rule, however, is not inflexible and admits of exceptions in cases of "compelling circumstances." [15] We take up this alleged error in instructions because of the importance of defendant's contention which we nevertheless consider to be without merit.

Specific criminal intent is not an element of the crime of rape. In *Flowers v. State* [16] we stated:

"'Whenever the code intends a crime to include a specific criminal intent, it so provides or exact language is used which comes under sec. 939.23, Stats., which defines when intent is an element of a crime.'"

The criminal statute here in issue does not contain any indication that specific intent to have intercourse with a victim by force and against her will is integral to the crime of rape, but merely knowledge that the victim is not one's wife. [17] If specific intent to use force and violence is not an element of the crime it is certainly not error to refuse to so instruct on such ground.

*By the Court.*—Judgment and order affirmed.

[15] *State v. Escobedo* (1969), 44 Wis. 2d 85, 92, 170 N. W. 2d 709.

[16] (1969), 43 Wis. 2d 352, 360, 168 N. W. 2d 843, quoting from *State v. Alfonsi* (1967), 33 Wis. 2d 469, 486, 147 N. W. 2d 550.

[17] Sec. 944.01 (1), Stats., provides: "**Rape.** (1) Any male who has sexual intercourse with a female he knows is not his wife, by force and against her will, may be imprisoned not more than 30 years."