STATE of Wisconsin, Plaintiff-Respondent,

v.

David HATCH, Defendant-Appellant.†

Court of Appeals

*No. 87–0018–CR. Submitted on briefs October 6, 1987.—
Decided April 28, 1988.*

(Also reported in 425 N.W.2d 27.)

† Petition to review pending. This petition was not disposed of at the time the volume went to press. Its disposition will be reported in a later volume.

For the defendant-appellant the cause was submitted on the briefs of *Charles Bennett Vetzner,* assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Sally L. Wellman,* assistant attorney general.

Before Dykman, Eich and Sundby, JJ.

SUNDBY, J. David Hatch appeals from a judgment convicting him of reckless use of a weapon, contrary to sec. 941.20(2)(a), Stats; kidnapping while possessing a dangerous weapon, contrary to secs. 940.31(1) and 939.63(1)(a), Stats; one count of attempted first-degree murder while possessing a dangerous weapon, contrary to secs. 940.01, 939.32(1) and 939.63(1)(a); and an order denying his motion for postconviction relief.[1] We reverse and remand for an evidentiary hearing, at which Hatch shall be present, on that part of the order denying his motion for postconviction relief on the grounds of ineffective assistance of counsel. In all other respects we affirm the judgment and order.

---

[1]Hatch does not appeal his conviction for the attempted first-degree murder of April Rankins.

815

# I.

## BACKGROUND OF THE CASE

Hatch became upset with his girlfriend, April Rankins, because he believed she had had sexual intercourse with another man. Hatch drove to the home where Rankins was staying but he was turned away because of the lateness of the hour. Hatch spent the remainder of the evening talking to a friend and reading love letters from Rankins. He talked of suicide. That morning Hatch and his friend drove to the home where Rankins was staying. He was allowed to see Rankins briefly but when the occupant of the home tried to push him out, he pulled a gun. Rankins told Hatch to put the gun away and he did. Rankins then dressed and accompanied Hatch. In the car, they argued about Rankins' relationship with the other man. They drove to Hatch's home and as he was getting out, a police officer, Peter Larsen, walked up to the car. Hatch shot Larsen twice in the head. Hatch then shot Rankins twice, once in the head. He then shot himself.

The medical testimony at trial established that Rankins and Larsen were each in a "coma vigil," a comatose vegetated state, as a result of the shootings.

## II.

## THE ISSUES

(1) Was Hatch denied a fair trial because of the admission of irrelevant and prejudicial evidence as to the effects of his crimes upon the victims?

(2) Was Hatch denied due process of law because the trial court instructed the jury and submitted

816

verdicts to the jury treating the two counts of attempted first-degree murder as one count?

(3) Under sec. 971.04(1)(d), Stats., was Hatch required to be present at the evidentiary hearing on his postconviction motion for a new trial based on ineffective assistance of counsel?

(4) Was Hatch denied the effective assistance of counsel?

## III.

## IRRELEVANT AND PREJUDICIAL EVIDENCE

The state introduced "before" and "after" photographs of Rankins and Larsen. Rankins' and Larsen's physicians were permitted to testify in detail as to the nature and extent of the victims' wounds, the chronic vegetative state of each of them and what was medically necessary to keep them alive. In addition, Larsen's wife testified as to his before and after condition. Hatch timely objected to such evidence.

Hatch argues that such evidence was not relevant and was so prejudicial that he was denied a fair trial. The state contends that the evidence of the permanent effect of the victims' wounds demonstrated the nature and severity of their injuries, and was relevant to show Hatch's intent to kill. It also argues that the evidence of the conditions of the victims and the medical treatment necessary to keep them alive was relevant to show the extraneous factor which prevented Hatch from actually causing death, which, the state argues, is an essential element of attempted first-degree murder.

■ Evidence is relevant which has a tendency to make the existence of any fact that is of consequence

817

to the determination of the action more probable or less probable than it would be without the evidence. Sec. 904.01, Stats. *See Bailey v. State,* 65 Wis. 2d 331, 351, 222 N.W.2d 871, 881–82 (1974) (introduction of bloodstained mattress was relevant to show victim was with defendant and had been molested by him).

The evidence as to the nature and extent of the victims' injuries was relevant on the issue of Hatch's intent to kill. A jury may infer an intent to kill from the facts of the assault and the severity of the injuries inflicted by the assailant. *See State v. Dix,* 86 Wis. 2d 474, 484, 273 N.W.2d 250, 255, *cert. denied,* 444 U.S. 898 (1979). *See also People v. Maxwell,* 474 N.E.2d 46, 51 (Ill. App. Ct. 1985) (medical testimony as to nature and extent of injuries is admissible to show intent). The evidence that Hatch shot Larsen and Rankins in the head at close range made it more probable that he intended to kill them than it would have been without such evidence.

However, we reject that state's argument that the permanent effect of the shootings upon the victims was relevant to show Hatch's intent. The fact that the shootings so damaged the brain of each of the victims as to leave each in a chronic vegetated state shows nothing as to Hatch's intent.

We also reject the state's argument that evidence of the victims' permanent conditions and the medical treatment necessary to keep them alive was admissible to establish the extraneous factor which prevented accomplishment of Hatch's intent to kill. The intervention of an extraneous factor is not an element of

the crime of attempt. *State v. Stewart,* 143 Wis. 2d 28, 31, 420 N.W.2d 44, 45 (1988).

In *Hamiel v. State,* 92 Wis. 2d 656, 285 N.W.2d 639 (1979), the defendant was charged with attempted robbery. Hamiel claimed that the state was required to establish as a necessary element of the crime the existence of a specific intervening extrinsic force. *Id.* at 662, 285 N.W.2d at 644. The court said, "whether another person or some other intervening extrinsic force are present and actually frustrate the accused person's attempt is not material to the inquiry of the defendant's guilt." *Id.* at 667, 285 N.W.2d at 646.

The evidence offered by the state, if believed by the jury, established that Hatch had the requisite intent to kill Larsen and that he had taken sufficient steps to do so that it was improbable that he would have voluntarily withdrawn from that intent. *See Stewart,* 143 Wis. 2d at 31, 420 N.W.2d at 45. The state's evidence that only medical science prevented the accomplishment of his intent was immaterial. "Failure, if and by whatever means the actor's efforts are frustrated, is relevant and significant only insofar as it may negate any inference that the actor did in fact possess the necessary criminal intent to commit the crime in question." *Id.* at 36, 420 N.W.2d at 47, quoting *Berry v. State,* 90 Wis. 2d 316, 327, 280 N.W.2d 204, 209 (1979), *cert. denied,* 444 U.S. 1020 (1980). The evidence as to the permanent conditions of the victims and the medical treatment necessary to keep them alive was not admissible to show an essential element of the crimes of attempted first-degree murder. It was error to admit the evidence.

We may not reverse Hatch's conviction or grant him a new trial on the ground of the improper

admission of evidence unless we are of the opinion, after an examination of the entire action or proceeding, that the error has affected Hatch's substantial rights. Secs. 805.18(2) and 972.11(1), Stats.

We have reviewed the evidence the state presented as to the effects of the shootings upon Larsen and Rankins. We conclude that the evidence inevitably "appeal[ed] to the jury's sympathies, arouse[d] its sense of horror, [and] provoke[d] its instinct to punish." *State v. Gulrud,* 140 Wis. 2d 721, 736, 412 N.W.2d 139, 145 (Ct. App. 1987). *See also Simpson v. State,* 83 Wis. 2d 494, 507, 266 N.W.2d 270, 275 (1978) (photographs of victim in hospital setting five weeks after shooting, "necessarily raised some feeling of sympathy for the victim"); *People v. Nickolopoulos,* 185 N.E.2d 209, 210–11 (Ill. 1962) (evidence of victim's condition in the hospital was highly prejudicial and deprived defendant of fair trial); *Haggenjos v. State,* 441 N.E.2d 430, 435 (Ind. 1982) (Hunter, J., concurring) (probative value of victim's recitation of hospitalization and surgery "attenuated"). The evidence was such that Hatch's rights could have been substantially affected.

However, the evidence, properly admitted, that Hatch intended to kill Larsen is so overwhelming that the error of admitting the prejudicial evidence did not affect his substantial rights. *See State v. Grant,* 139 Wis. 2d 45, 53–54, 406 N.W.2d 744, 748 (1987) (viewing the error in the context of the entire trial, and considering the strength of the untainted evidence, error was harmless). There is no "reasonable possibility that the error contributed to [Hatch's] conviction." *State v. Dyess,* 124 Wis. 2d 525, 543, 370 N.W.2d 222, 232 (1985).

Jay Kurth, a Beloit fire department paramedic, assisted in transporting Rankins and Hatch to the

Beloit Memorial Hospital. He testified that Hatch asked him what kind of a job he did on the police officer and the girl. He than stated, "I hope they both die." After Hatch was treated, Kurth transported him to a hospital in Rockford. Kurth testified that Hatch told him that he shot the officer twice to make sure he was dead and wouldn't be able to "come back at me." Hatch stated that the officer had not had time to draw his weapon and that "[h]e fell to the ground and I shot him while he was down." Hatch also stated: "No cop is going to arrest me. All they wanna do is take my money. I hate cops and girls that go out with other guys."

Phillip Licary, a police officer for the City of Beloit, arrived at the scene of the shootings before Larsen, Rankins and Hatch were transported from the scene. He testified that Larsen's gun was in his holster with the securing strap snapped.

Office Licary accompanied Hatch in the ambulance to Rockford. He advised Hatch of his *Miranda* rights. Licary described Hatch as very coherent, cognizant of what was going on and very articulate and precise in his words. During the course of Licary's questioning, Hatch stated: "I shot the officer twice and I didn't want him to shoot me before I had a chance to shoot April." "I turned around and [the officer] was laying on the ground and I shot him twice." "I don't know how he got on the ground." "I shot the officer in the head twice." "I shot April twice and the officer twice and I shot myself once."

Doctor Ronald Yake, who treated Hatch, testified that in response to his question as to whether Hatch had executed Larsen, Hatch replied: "I'm sorry I didn't do a better job."

Ruth Atwood, a nurse at Beloit Memorial Hospital, interviewed Hatch to find out the extent of his injuries and what had happened. Hatch stated: "I came to the house and the police car was there and I shot ... the policeman, I shot my girlfriend and I shot myself."

Detective Orville Kreitzmann of the City of Beloit Police Department interviewed Hatch at the Rockford hospital after determining that he had been advised of his *Miranda* rights. Hatch gave Officer Kreitzmann a narrative account of the events leading up to the shootings and of the shootings themselves. Hatch stated that Larsen slipped and fell on the snowy driveway and that he thereupon shot him twice in the head. He then walked to Larsen's squad car where Rankins was crouched on the ground and shot her twice. He then backed off into the yard and shot himself in the head. He said he shot Larsen because he felt he was going to go to prison and he thought that Larsen was going to shoot him. He stated that Larsen did not pull his weapon.

Officer Terry Roden of the Town of Beloit Police Department testified that he was present in Hatch's hospital room when Hatch made the statement to his two attorneys, "I tried to kill two people."

██ Hatch is damned out of his own mouth. In view of his repeated volunteered inculpatory statements which clearly demonstrate his intent to kill Larsen, the admission of the evidence as to the permanent effect of the shootings upon his victims and the medical treatment necessary to keep the victims alive did not affect Hatch's substantial rights. There is no reasonable possibility that the error contributed to his conviction.

IV.

## SUBMISSION OF THE CASE TO THE JURY

Hatch contends that the trial court treated the two counts of first-degree murder as a single unified charge and that this was prejudicial to him in three ways. First, it undermined his fundamental due process right to have his guilt on a criminal charge established by proof beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 361 (1970). Second, the court invaded the province of the jury and in effect, directed a finding against Hatch that he was guilty of both counts of first-degree murder or neither. Third, the lumping together of the offenses allowed the jury to use the evidence relating to the Rankins count to find Hatch guilty of the attempted first-degree murder of Officer Larsen. Hatch contends the state was thus relieved of its due process requirement to prove each element of each count of attempted first-degree murder and he has been denied his right to a fair trial.

The trial court submitted each of the first-degree murder counts in three separate documents. The first referred to count 4 and stated: "We, the Jury, duly empaneled and sworn to try this issue, find the defendant, David Hatch, guilty of attempted first-degree murder." A not guilty verdict making reference to count 4 was also submitted. A separate document, also relating to count 4, asked the jury: "Did the defendant, David Hatch, commit the crime of attempted first-degree murder while possessing, using or threatening to use a dangerous weapon?"

The verdicts submitted to the jury with respect to count 5 are identical. None of the documents referred to Rankins or Larsen. Hatch claims that had the jury

desired to reach a not guilty verdict on one of the counts, it could not know which of the two guilty verdicts to reject.

Hatch also claims that the trial court in its instructions treated the two first-degree murder counts as a single charge and eliminated the need for the state to prove each charge beyond a reasonable doubt and the requirement of unanimity on each count. The trial court instructed the jury:

> If you are satisfied beyond a reasonable doubt from the evidence in this case that the defendant had formed in his mind the purpose to kill April Rankins and Officer Peter Larsen and had performed acts towards the accomplishment of such attempt to kill, which showed unequivocally that he had formed such intent and that the killing was prevented by some extraneous factor, then you should find the defendant guilty of attempted first-degree murder. If you are not so satisfied you must find the defendant not guilty of attempted first-degree murder.

We first consider the state's claim that Hatch has waived his right to challenge the verdict forms and jury instructions by failing to object at the verdict and instructions conference. The state acknowledges we may review the alleged errors in spite of Hatch's waiver. We have the discretionary power to review a waived instructional error if the error goes to the "integrity of the fact-finding process." *State v. Shah,* 134 Wis. 2d 246, 254, 397 N.W.2d 492, 496 (1986). *See State v. Damon,* 140 Wis. 2d 297, 304, 409 N.W.2d 444, 447 (Ct. App. 1987).[2] We adopt that test with respect to

---

[2]Contrary to the concurrence's assertion, we do not overrule *Damon.* In *Damon,* 140 Wis. 2d at 304, 409 N.W.2d at 447, the

the claimed errors in the submission of the verdict. The claimed errors in submission of this case to the jury go to the integrity of the fact-finding process and we exercise our discretion to review them.

■
The jury was given the proposed verdicts and the instructions. The trial court instructed the jury with respect to counts 4 and 5 of the amended information. Count 4 charged Hatch with the crime of attempted first-degree murder of Rankins. Count 5 charged him with the attempted first-degree murder of Larsen. Thus, the jury was able to relate the verdict forms to the counts of the amended information. We therefore reject Hatch's claim that if the jury wished to find

court adopted the following holding of *Shah,* 134 Wis. 2d at 253–54, 397 N.W.2d at 496: "Even if counsel has failed to enter a proper objection at trial, an appellate court may nevertheless reach the merits of the defendant's claimed error. This court has exercised its discretion to review jury instructions which go to the integrity of the fact-finding process." The concurrence claims that the phrase "affects the integrity of the fact-finding process" is "unexplained and undefined." We disagree. Errors going to the integrity of the fact-finding process have been alleged to include state and federal constitutional questions relative to the state's burden of proof beyond a reasonable doubt, *State v. Baldwin,* 101 Wis. 2d 441, 445–46, 304 N.W.2d 742, 746 (1981); right to a unanimous verdict, *State v. Gustafson,* 119 Wis. 2d 676, 693, 350 N.W.2d 653, 661–62 (1984), *modified on other grounds,* 121 Wis. 2d 459, 359 N.W.2d 920, *cert. denied,* 471 U.S. 1056 (1985); presumption of intention from acts, *State v. Zelenka,* 130 Wis. 2d 34, 42, 387 N.W.2d 55, 58 (1986); and shifting burden of persuasion to the defendant, *Shah,* 134 Wis. 2d at 254–55, 397 N.W.2d at 496. Errors which affect the integrity of the fact-finding process are those which violate a defendant's constitutional right to a fair trial. The errors Hatch alleges, relieving the state of its burden of proof beyond a reasonable doubt and the requirement of a unanimous verdict, clearly implicate his right to a fair trial and involve state and federal constitutional questions.

825

Hatch not guilty of one of the two counts it could not know which of the two guilty verdicts to reject.

■

As to the jury instructions, we agree with the state that, viewed in their entirety, the instructions do not have the effect Hatch claims. The trial court charged the jury on the fourth and fifth counts of the information:

> The defendant in this case is charged with attempted first-degree murder. Before the defendant may be found guilty of attempted first-degree murder the state must prove by evidence which satisfies you beyond a reasonable doubt there were present the following two elements of the offense. First, respectively as to each count, the defendant intended to kill April Rankins. The defendant intended to kill Officer Peter Larsen. Second, the defendant did acts which demonstrate, unequivocally, under all the circumstances, that he intended to and would have killed April Rankins and would have killed Officer Peter Larsen ....

That portion of the instructions which Hatch finds fatally flawed was not given until after the trial court had instructed the jury that it was necessary to find as to the fourth count, that Hatch intended to kill April Rankins and as to the fifth count, that he intended to kill Officer Peter Larsen. We conclude that the instructions, considered in their entirety, render any error harmless because the overall meaning communicated by the instructions was a correct statement of the law. *State v. Ivy,* 119 Wis. 2d 591, 603, 350 N.W.2d 622, 628–29 (1984).

## V.

## HATCH'S PRESENCE AT THE
## POSTCONVICTION EVIDENTIARY HEARING

Hatch's motion for postconviction relief under sec. (Rule) 809.30(2), Stats., was heard in two parts. The first hearing was nonevidentiary and involved claimed errors of law. The second was an evidentiary hearing on Hatch's claim of ineffective assistance of counsel. The trial court ruled that sec. 971.04(1)(d), Stats., did not require that Hatch be present at the hearing. Section 971.04(1)(d) provides: "Except as provided in subs. (2) and (3), the defendant shall be present ... [a]t any evidentiary hearing." The trial court concluded that the statute applied to evidentiary hearings prior to trial and not to postconviction matters. Hatch objected to the trial court's ruling but proceeded with the hearing. We conclude that the trial court erred.

The state does not adopt the trial court's reasoning but contends that sec. 971.04(1)(d), Stats., only requires the defendant to be present at evidentiary hearings from the time of the arraignment and the pronouncement of judgment and the imposition of sentence. *See* sec. 971.04(1)(a)–(g). The state claims that sec. 971.04(1)(h)[3] is intended to encompass other proceedings, such as postconviction proceedings. We disagree. Sub.(1)(h) is a catchall provision which

---

[3]Section 971.04(1)(h), Stats., provides:

Except as provided in subs.(2) and (3), the defendant shall be present ... [a]t any other proceeding when ordered by the court.

authorizes the court to require the defendant to be present at any proceeding not enumerated in sub.(1)(a) through (g).

The state argues that sec. 971.04(3), Stats., supports its position that sec. 971.04(1)(d) does not require the defendant's presence at a postconviction evidentiary hearing. Section 971.04(3) provides in part: "A defendant need not be present at the pronouncement or entry of an order granting or denying relief under s. 974.02 or 974.06."[4] If any inference may be drawn from sec. 971.04(3), it is that the defendant's presence is necessary at the evidentiary phase of a hearing on a postconviction motion but is excused at the pronouncement or entry of the order on the motion.

The state also relies on *Sanders v. State,* 69 Wis. 2d 242, 264–65, 230 N.W.2d 845, 857–58 (1975). The state's reliance is misplaced because that case dealt with nonevidentiary posttrial motions. The *Sanders* court cited sec. 974.06(5), Stats., which provides: "A court may entertain and determine such motion without requiring the production of the prisoner at the hearing." The committee comment to sec. 974.06(5) makes clear that the authority in the trial court to hear and decide a postconviction motion without requiring the production of the prisoner is limited to nonevidentiary motions. The comment states: "Sub.(5) provides that the presence of the prisoner is not necessary, *although he certainly must*

---

[4]Section 974.02, Stats., applies to appeals and postconviction relief in criminal cases, including motions under secs. (Rules) 809.30 and 809.40, Stats. Section 974.06 provides a postconviction procedure after the time for appeal or postconviction relief under sec. 974.02 has expired.

*be produced at an evidentiary hearing."* Criminal
Rules Committee Note to sec. 974.06, sec. 63, ch. 255,
Laws of 1969, at 671 (emphasis added).

Section 974.06, Stats., was taken from 28 U.S.C.
2255.[5] Criminal Rules Committee Note to sec. 974.06,
*supra.* We may gain assistance in deciding the general
question of the defendant-petitioner's need to be
present at a postconviction evidentiary hearing from
the construction the United States Supreme Court has
given 28 U.S.C. sec. 2255. *See Carlson Heating, Inc. v.
Onchuck,* 104 Wis. 2d 175, 179 n. 2, 311 N.W.2d 673,
676 (Ct. App. 1981) (when Wisconsin adopts language
of a federal statute which has been construed by the
United States Supreme Court, we take that construc-
tion).

In *United States v. Hayman,* 342 U.S. 205, 219–20
(1952), the Court construed the requirement of 28
U.S.C. sec. 2255 that when the issues cannot be
determined by the "files and records" in the trial

---

[5]28 U.S.C. sec. 2255 (1982) provides in part:

A prisoner in custody under sentence of a court established by
Act of Congress claiming the right to be released upon the ground
that the sentence was imposed in violation of the Constitution or
laws of the United States, or that the court was without
jurisdiction to impose such sentence, or that the sentence was in
excess of the maximum authorized by law, or is otherwise subject
to collateral attack, may move the court which imposed the
sentence to vacate, set aside or correct the sentence.
. . . .
Unless the motion and the files and records of the case
*conclusively show that the prisoner is entitled to no relief,* the
court shall ... grant a prompt hearing thereon, determine the
issues and make findings of fact and conclusions of law with
respect thereto. ...

A court may entertain and determine such motion without
requiring the production of the prisoner at the hearing.

court, that the trial court "grant a prompt hearing thereon." As to this requirement the Court stated:

> In requiring a "hearing," the Section "has obvious reference to the tradition of judicial proceedings." [Hayman,] denied an opportunity to be heard, "has lost something indispensable, however convincing the ex parte showing." We conclude that the District Court did not proceed in conformity with sec. 2255 when it made findings on controverted issues of fact relating to [Hayman's] own knowledge without notice to [Hayman] and without his being present.

*Id.* at 220 (footnotes omitted).

The *Hayman* court explained that, although a postconviction proceeding is not part of the criminal trial, the defendant's presence may be necessary where a statute affords him or her a "hearing." The Court stated:

> Unlike the criminal trial where the guilt of the defendant is in issue and his presence is required by the Sixth Amendment, a proceeding under sec. 2255 is an independent and collateral inquiry into the validity of the conviction. Whether the prisoner should be produced depends upon the issues raised by the particular case. Where, as here, there are substantial issues of fact as to events in which the prisoner participated, the trial court should require his production for a hearing.

*Hayman,* 342 U.S. at 222–23.

We adopt the reasoning of the *Hayman* court and apply it to postconviction relief under secs. 974.02 and 974.06, Stats. Where there are substantial issues of fact as to events in which the defendant participated,

under sec. 971.01(1)(d), Stats., the trial court shall require his or her production for a postconviction evidentiary hearing. Where the defendant claims, as does Hatch, that he or she was denied the effective assistance of counsel, the testimony of trial counsel must be preserved for appellate review. *State v. Machner,* 92 Wis. 2d 797, 804, 285 N.W.2d 905, 908 (Ct. App. 1979). The defendant is peculiarly situated to assist in trying such a motion because he or she participated in the events as to which trial counsel will testify. An evidentiary hearing without the defendant's presence would be contrary to the tradition of judicial proceedings.[6] *See Hayman,* 342 U.S. at 220.

Finally, the state argues that Hatch is not entitled to relief because he has not shown actual prejudice. The state claims that Hatch has not alleged that his presence was necessary to a fair and just hearing or that he had testimony to offer on the factual issues involved. The state's claim is based on his counsel's statement to the court when the evidentiary hearing date was set:

> MR. VETZNER: At this point, there's no representation [Hatch] is going to testify. I cannot assure the Court that, based on what some other evidence of what might come in, that I might not choose to have him testify.
>
> . . . .
> It would be my position, your Honor, ... to the terms of providing effective assistance of Counsel

---

[6]Hatch also claims that his absence at the evidentiary hearing violated his right to effective assistance of counsel. *Geders v. United States,* 425 U.S. 80 (1976). Because we have resolved Hatch's claim on other grounds, we need not reach his constitutional claim. *See Hansman v. Oneida County,* 123 Wis. 2d 511, 512 n. 1, 366 N.W.2d 901, 902 (Ct. App. 1985).

> where there's going to be evidence taken[,] I should be able to consult with my client during the course of an evidentiary hearing, whether it's before trial or after trial, it doesn't make any difference. I think the same rationale should apply. . . .

Counsel made clear that Hatch might testify, depending on the evidence which came in, and that he wanted to be able to consult with Hatch during the course of the evidentiary hearing. We conclude that because of the nature of the postconviction relief sought, Hatch's presence was necessary under sec. 971.04(1)(d), Stats.

It is not necessary that we decide whether sec. 971.04(1)(d), Stats., establishes a per se requirement that a criminal defendant be present at every evidentiary hearing on a postconviction motion. We hold that because there were substantial issues of fact as to Hatch's communications with and instructions to his trial counsel of which he had personal knowledge, under sec. 971.04(1)(d) the trial court should have required his production at the evidentiary hearing on his ineffective assistance of counsel motion.

## VI.

### EFFECTIVE ASSISTANCE OF COUNSEL

Although Hatch was not present, his counsel proceeded with an evidentiary hearing on his motion for postconviction relief on the grounds his state and federal constitutional rights to effective assistance of

832

counsel were violated.[7] We have concluded as a matter of law that the jury instructions, on which Hatch bases part of his ineffective assistance of counsel claim, were not defective. Counsel's failure to object to those instructions could not have prejudiced Hatch. Hatch's instructions to trial counsel relative to the jury instructions are not relevant to the question of counsel's effectiveness in this respect. His absence from the evidentiary hearing when this issue was argued was harmless error. That portion of the court's order denying Hatch postconviction relief on this claim is affirmed.

Because we conclude that part of the order denying Hatch's motion based upon ineffective assistance of counsel must be reversed and Hatch given an evidentiary hearing at which he shall be present, we do not address Hatch's other arguments. The nature of his arguments is such that his presence may not

---

[7]Hatch's motion included the following claim:

3. Defendant's state and federal constitutional right to effective assistance of counsel was violated in the following respects:

a. no request was made for the inclusion of lesser included offense instructions of attempted manslaughter, self-defense, and endangering safety by conduct regardless of life on Count 5. To the extent that the request for the latter instruction could be deemed nonprejudicial in light of the denial of the requested instruction on injury by conduct regardless of life, it is submitted that the trial judge's decision was based on an error of law in concluding that insufficient evidence of depravity was presented, Transcript of May 17, 1985, at 90. *See State v. Blanco,* 125 Wis. 2d 276, 371 N.W.2d 406 (Ct. App. 1985);

b. no objection was made to the defective instructions concerning individual consideration of each count as set forth above in paragraph 2; and

c. no motion was made to seek the suppression of all statements made by the defendant and introduced into evidence against him.

contribute to the strength of his claims or add to the evidence already produced. However, he has a statutory right to be present and it would be inappropriate for us to address his claims without a record made at an evidentiary hearing at which he has the opportunity to participate.

*By the Court.*—Judgment affirmed, order affirmed in part, reversed in part and cause remanded for further proceedings consistent with this opinion.

DYKMAN, J. (concurring). Because sec. 752.41(2), Stats., gives published court of appeals opinions statewide precedential effect, we are required to follow those opinions unless we overrule them. The majority has overruled *State v. Damon,* 140 Wis. 2d 297, 409 N.W.2d 444 (Ct. App. 1987), but has not said it is doing so. This creates confusion in the law. When we overrule our previous decisions, we should do so directly.

In *Damon,* we concluded that prior exceptions to the jury instruction waiver rule had been abolished by sec. 805.13(3), Stats. We said:

> Under the court's analysis in *C.E.W.* and *Shah,* the enactment of sec. 805.13(3) in 1978 [sic][1] abolished the previous exceptions to the waiver rule regarding jury instructions. These exceptions include the "plain error" test enunciated in *Claybrooks* in 1971, and the "form-substance" test enunciated in *Lambert* in 1976. In accord with that reasoning, the "compelling circumstances" test adopted in *Brown v. State,* 59 Wis. 2d 200, 214, 207 N.W.2d 602, 609, (1973), was also abolished with

[1]Section 805.13(3), Stats., was adopted by supreme court order on February 17, 1975, and was made effective January 1, 1976. 67 Wis. 2d 585, 703 (1975).

the adoption of sec. 805.13(3). *Accordingly, we conclude that the plain error, form-substance, and compelling circumstances exceptions to the instructional waiver rule no longer exist. To conclude otherwise would render sec. 805.13(3) meaningless.* (Emphasis added.) *Id.* at 304, 409 N.W.2d at 447.

The majority resurrects one of these exceptions. The term "integrity of the fact-finding process" is taken from *State v. Baldwin,* 101 Wis. 2d 441, 445–46, 304 N.W.2d 742, 746 (1981), and is not a test, but an example of "compelling circumstances." This is made clear by the court's use of that term:

> It is true as a general rule that failure to object to a jury instruction in timely fashion constitutes a waiver of the objection. *Kutchera v. State,* 69 Wis. 2d 534, 551, 230 N.W.2d 750 (1975); *State v. Cydzik,* 60 Wis. 2d 683, 694, 211 N.W.2d 241 (1973); *State v. Schenk,* 53 Wis. 2d 327, 333, 193 N.W.2d 26 (1972). "This rule, however, is not inflexible and admits of exceptions in cases of 'compelling circumstances.'" *Brown v. State,* 59 Wis. 2d 200, 214, 207 N.W.2d 602 (1973). The defendant's challenge to the disjunctive jury instruction raises state and federal constitutional questions relative to the state's burden of proof beyond a reasonable doubt and the defendant's right to a unanimous verdict. These matters go directly to the integrity of the fact finding process, and the defendant's failure to object at trial should not preclude him from raising them on appeal. (Footnote omitted.) *Id.*

Had the supreme court intended another exception to the waiver rule, it would have identified this new rule.

The supreme court has held that the "misstate the law or mislead the jury" test did not survive the adoption of sec. 805.13(3), Stats., *State v. Shah,* 134 Wis. 2d 246, 251–52 n. 4, 397 N.W.2d 492, 495 (1986),

and the "plain error" test is applicable only to evidentiary rules in sec. 901.03(4), Stats. *In Interest of C.E.W.,* 124 Wis. 2d 47, 55, 368 N.W.2d 47, 51–52 (1985). We held that the "compelling circumstances" exception to the waiver rule was abolished when sec. 805.13(3) was adopted. *Damon,* 140 Wis. 2d at 304, 409 N.W.2d at 447. "Integrity of the fact-finding process," being an example of "compelling circumstances," could not have survived sec. 805.13(3)'s adoption.

As we noted in *Damon,* exceptions to sec. 805.13(3), Stats., render that rule meaningless. The majority's opinion destroys any incentive to bring instruction errors to the attention of the trial court. Instead of giving a trial court "an opportunity to correct the error," *Air Wisconsin, Inc. v. North Cent. Airlines, Inc.,* 98 Wis. 2d 301, 311, 296 N.W.2d 749, 753 (1980), we have now encouraged litigants to lie in the weeds if they conclude the trial court has omitted a jury instruction which later can be described as vital. The court of appeals should strongly encourage litigants to bring perceived error to the attention of the trial court, for only then can the error be corrected and an appeal avoided.

The majority fails to recognize that a strict application of the sec. 805.13(3), Stats., waiver rule does not leave this court helpless in the face of injustice. *Air Wisconsin* addressed a waived objection to an instruction through the use of sec. 751.06, Stats. *Id.* at 317, 296 N.W.2d at 756. Section 752.35, Stats., is identical to sec. 751.06 except that sec. 752.35 applies to the court of appeals. Also, some waivers may be considered under an ineffective assistance of counsel review. *See State v. Johnson,* 133 Wis. 2d 207, 217, 395 N.W.2d 176, 181 (1986) (assistance of counsel must not fall below objective standard of reasonableness). My

disagreement with the majority is not that it considers an issue not raised at trial but that it has amended sec. 805.13(3) by adding an exception to that rule.

The majority has not only resurrected a once-invalidated exception to sec. 805.13(3), Stats., but has concluded that the trial court's failure to *sua sponte* give a specialized instruction "affects the integrity of the fact-finding process." That term is unexplained and undefined. The "constitutional right to a fair trial" suggested as a definition by the majority, is a term so broad that it gives little guidance. There is no way that future litigants can know when or why a trial court's failure to instruct a jury when not asked to do so "affects the integrity of the fact-finding process." With no guidance, it will be a rare appellant who, having discovered a new or better instruction, will not conclude that the trial court's failure to give that instruction affected the integrity of the fact-finding process. By accepting this notion, we repeal sec. 805.13(3), and require that we address future claims of instructional error whether or not the trial court was given the opportunity to avoid error by changing the instruction.

This case is a good example of why we should conclude that defendant has failed to preserve his issues. It would have been a simple matter for defendant to ask the trial court to include Rankin's and Larsen's names in the verdicts, and to instruct the jury on burden of proof and unanimity as to each charge. This would have been an unremarkable and probably unopposed request, and would probably have been granted. The potential appellate issue would have evaporated.